(No. 18386.—

CHARLES B. SIPPEL, *et al.* Plaintiffs in Error, *vs.* ANNA WOLFF *et al.* Defendants in Error.

*Opinion filed December 20, 1928.*

JOHN GIBSON HALE, for plaintiffs in error.

WETTEN, PEGLER & DALE, for defendant in error Anna Wolff; SHERMAN C. SPITZER, and THOMAS J. HOBAN, for defendant in error the Chicago Title and Trust Company.

Mr. COMMISSIONER CROW reported this opinion:

The circuit court of Cook county sustained a demurrer to complainants' second amended bill of complaint. The complainants are the children of the deceased brothers of

the widow of G. Adolph Jauss. The object of the bill was to effect a renunciation of the will of G. Adolph Jauss, who died testate in 1908, and his estate was in the probate court finally settled, administration closed, and the assets distributed as directed in the will, in 1912. Caroline Jauss, his widow, was insane and died February 12, 1924, without having recovered from her insanity. Anna Wolff, one of the defendants, demurred to the bill as secondly amended, the demurrer was sustained and the second amended bill dismissed for want of equity. To reverse the decree complainants bring the record to this court by writ of error.

Substantially, the averments of the bill as abstracted are: That G. Adolph Jauss died in March, 1908, testate and without children, leaving Caroline Jauss, an insane person, his widow; that the widow remained insane and died in February, 1924, intestate and without children and leaving complainants as her sole and only heirs-at-law, being children of her brothers, deceased; that in 1908 testator's will was admitted to probate and the Chicago Title and Trust Company was appointed and qualified as executor; that by the terms of the will testator's real estate known as No. 3027 South Park avenue, Chicago, was given in trust to Albert Ansel for the support, etc., of the widow, and at her death to go one-half to defendant Anna Wolff and the other half to Emma Lange, Clara Struve, Lydia Breisch and Beata Hoffman, or their descendants surviving them, in equal parts, the provision for the widow to be in lieu of her right of dower and homestead. The executor distributed money and funds among the devisees, except to the widow and except from the real estate, to the amount of about $25,000. In 1908 the State Bank of Chicago was appointed by the probate court conservator for the widow and duly qualified and continued to act as such until her death, when by the same court it was appointed and qualified as administrator of her estate; that in February, 1909, the conservator filed in said court a renunciation of the will on behalf of its

ward, and thereupon it became its duty to take appropriate proceedings by bill in chancery to give effect to and complete such renunciation; that the conservator has so far failed or refused to institute such proceeding in chancery though requested so to do by complainants, claiming that by reason of an order or announcement or decision of the probate judge of Cook county made about May 26, 1911, during the life of the widow, the conservator could not make renunciation of the will; that the administration was closed upon the testator's estate in December, 1912, and the personal estate distributed; that the widow's death was unknown to the conservator until complainants suggested it to the court in September, 1924, when the court ordered that the conservator render final account and report as such within thirty days and stand as administrator of the estate of the deceased widow; that in October, 1924, the conservator filed, and had approved the same day without knowledge or notice to complainants, its final account as such, wherein it accounted for a small sum of money as having been received from the trustee, but on motion of complainants to set aside the approval of the account the probate judge announced and stated that the conservator should have instituted a bill in chancery for the purpose of giving effect to its renunciation of the will filed on behalf of the widow and that it should now co-operate with the heirs of the widow in taking such action; that on the distribution of the personal estate of the testator the executor paid to Anna Wolff $9232.51, and to Emma Lange, Clara Struve, Lydia Breisch and Beata Hoffman, each, $2308.17, one-half of all of which sums was the property of the widow by reason of the renunciation so made of the will by the conservator and should have been paid to her or her conservator by the executor; that there vested in the widow, by virtue of law from the renunciation of the will by the conservator, an estate or interest of one-half in and to the real estate; that since the close of the testator's estate Anna Wolff has as-

sumed control and possession of the real estate, claiming to be absolute owner thereof by force of the will, and received the rents therefrom; that the real estate is of the value of about $25,000 and the rents and profits therefrom are of the value of $150 per month or more; that in February, 1925, after the refusal of the State Bank of Chicago to bring a bill in chancery to give effect to its renunciation of the will, complainants filed a renunciation of the will in the probate court as the heirs-at-law of the widow; that Anna Wolff, Emma Lange, Clara Struve, Lydia Breisch and Beata Hoffman are all non-residents of Illinois, and, as complainants believe, are without any means from which a judgment recovered against them might be realized upon; that unless renunciation of the will is given effect by this proceeding there will have been lost to the widow and to complainants one-half of the personal estate of the testator, amounting to about $12,500, and an interest or estate of one-half in and to the real estate of the value of about $12,500, because of the inability of the widow to act for herself and of the failure and refusal of the State Bank to take the necessary action for her.

The relief prayed was for a decree making effective the renunciation of the will filed by the conservator and also by complainants, and by decreeing distribution of the testator's estate according to and based upon such renunciation; ownership of complainants to an estate of one-half in the real estate and partition thereof; accounting between complainants and Anna Wolff, Emma Lange, Clara Struve, Lydia Breisch and Beata Hoffman and the executor as to the rents and income from the real estate and as to the distribution of the personal estate of the testator, charging the interest of defendants Anna Wolff, Emma Lange, Clara Struve, Lydia Breisch and Beata Hoffman in the real estate with the payment of such sums as may be found due from them to complainants.

Among other grounds assigned for demurrer by Anna Wolff were, that no cause of action is stated against her; that the cause of action attempted to be stated against her is *res judicata,* having been previously adjudicated by the probate court; that the complainants have no legal right or authority to renounce the will of decedent nor to prosecute a suit or proceeding attempting to give effect to the renunciation of the will filed February 10, 1909; that the bill shows that the estate of Jauss was closed in December, 1912, the property distributed according to his will, and title vested in the devisees named in it; that the alleged renunciation of ·the will filed by complainants was not filed until after the estate of Caroline Jauss had been administered and closed by the order of the probate court; that the court was without jurisdiction to grant the relief prayed in the bill.

Without specific reference to the many errors assigned, the questions for decision upon the record as stated by plaintiffs in error are: (1) The effect of the election to renounce the will made on behalf of the insane widow by her conservator; (2) the effect of the direction of the probate court to disregard the election filed by the conservator; (3) the effect of the renunciation·of the will filed by complainants as heirs of the insane widow.

In 1909 the conservator, the State Bank, filed for its ward in the probate court a renunciation of the provisions of the will and elected for her to take under the statute. In 1911 the probate court, in the course of the administration of the Jauss estate, decided the conservator had no authority to make the renunciation and election and that the same were of no effect. The court refused to recognize the renunciation in the settlement and distribution of the estate. It directly affected the parties interested in the settlement. There was no appeal from the order entered as a result of the decision. It is too late now to challenge it. The court had jurisdiction of the subject matter and of the parties. However erroneous the decision and judgment may have

been, all parties to the record, and those in privity with them, are now precluded from urging the error complained of. Everyone affected by it is concluded by it in this collateral proceeding. *People* v. *Chicago Bonding Co.* 294 Ill. 362; *People* v. *Kohlsaat,* 168 id. 37; *Hoit* v. *Snodgrass,* 315 id. 548; *Sheahan* v. *Madigan,* 275 id. 372; *Chicago Title and Trust Co.* v. *Brown,* 183 id. 42; *Matthews* v. *Doner,* 292 id. 592.

It is urged by counsel for plaintiffs in error that "if the Statute of Limitations giving to infants, insane persons and their heirs two years after the removal of a disability to assert their rights is to be given, then filing of the renunciation of this husband's will by the heirs of his insane widow in two years after her death was an election by said widow to renounce the will of the testator." It is said that this court recognized the effect of the statute as contended for, in *Brown* v. *Ray,* 314 Ill. 570. There it was decided, as the statute requires, that infants may assert their rights within two years after reaching majority. An infant's disability is removed by attaining his majority. The disability of an insane person is removed by recovery from insanity with which he is afflicted and the restoration of his mental faculties. Infants and insane persons may, for a period of two years after attaining majority or restoration, assert their rights under section 9 of the Limitations act. The extension of time is arbitrary and legislative, but no one, it is assumed, can seriously contend that death, though it be the cessation of all infirmity, confers upon those succeeding to the rights of one incapacitated and dying, an extension of time within which rights inhering in the insane person may be asserted. The contention is that when the heirs of the widow filed a renunciation of the will within two years after the death of the insane widow there was an election by the widow to renounce the will. No answer to the contention is necessary. The statement is a *reductio ad absurdum* and is its own answer. All of the cases cited

and quoted from extensively in the brief have been considered with the care the contention demands. None of them tend to support it.

Section 10 of the Limitations act is invoked by plaintiffs in error as applicable to this case, and it is contended that the decree under consideration violates their rights under it. The section provides: "If the person first entitled to make entry or bring such action dies during the continuance of any of the disabilities mentioned in the preceding section, and no determination or judgment has been had of or upon the title, right or action which accrued to him, the entry may be made or the action brought by his heirs or any person claiming from, by or under· him at any time within two years after his death, notwithstanding the time before limited in that behalf has expired." The section must be considered with all of its limitations. Heirs are now asserting rights derived, as they contend, from or through Mrs. Jauss, under the disability of insanity at and for several years preceding her death. Sections 9 and 10 of the act save rights of persons under disability. The former relates to the rights of infants and insane persons while living; the latter relates to the rights of heirs or others claiming through such persons after the death of the persons under disability. If the rights of an insane person have been determined during her life there is no occasion to consider them after her death. Section 10 expressly provides that the rights of heirs derived through an insane person shall be subject to determination after the death of such person only where "no determination or judgment has been had of or upon the title, right or action which accrued" before the death of the insane person. During the life of the insane person the right now presented and claimed was denied as belonging to her and is not now a matter to be reconsidered as to those claiming through her. In other words, when the probate court, during the settlement of the estate of Jauss, held that the incompetent widow

should not through her conservator renounce the will of her husband, such action, however erroneous, if it was erroneous, was a determination of the right and cannot now be asserted by her heirs. The bill avers the determination, the demurrer admits it, and by virtue of the section relied on the question is not now subject to re-examination.

The court's action is clarified when we recall that the probate court has to a certain extent the powers of a court of chancery over insane persons and their property. The jurisdiction is exercised in the interest of the insane and of infants, properly designated as wards of the court. A court of equity will suffer no intrusion upon rights and interests of infants or of the insane. The statute authorizing the renunciation of the provisions of a will by a widow, an infant or an insane person requires only that the renunciation shall be filed. It is not required to be approved by the court. When the conservator filed a renunciation of the provisions of the will on behalf of its ward it did what it deemed proper and best for such ward. It is not disclosed by the record when the probate judge learned of the renunciation, but he was informed of it and entered an order nullifying it. Nothing in the bill discloses any impropriety in the order setting it aside.

That the probate court was acting well within its jurisdiction is established by the decision in *Davis* v. *Mather,* 309 Ill. 284. The conservatrix in that case refused to renounce a will and to make an election on behalf of her insane ward. The court thereupon appointed a next friend to execute it, and in addition entered an order making a renunciation and election on behalf of the insane person. The order and procedure of the court were approved by this court, and it was said: "The jurisdiction of a court of probate over the estate of an incompetent ward is equitable. In this country the probate court exercises the equitable jurisdiction over the property of the insane and mentally incompetent exercised by the English court of chancery. It

has power to order that done which is for the best interest of the estate of the ward, and we perceive no good ground for saying that because the election is made personal to the spouse the probate court cannot exercise power to elect for such spouse when the latter is mentally incompetent and is a ward of the court. * * * It would seem, therefore, under the authorities and by reason of the statute conferring upon the probate court the equitable jurisdiction over the estates of incompetent wards, that an election made by a guardian *ad litem* at the direction of a court having jurisdiction of the estate of the ward is valid. It was peculiarly within the power of the probate court to pass upon transactions concerning the ward's estate. If it was not for the best interest of the estate of the ward to part with his dower interest in the lands of his wife for the devise in the will it would seem that the probate court should be permitted to so determine, and having determined that such was not in the interest of the ward's estate the court should so find and order on behalf and in the name of such ward a renunciation of the provisions of the will."

If the probate court has the power, and if the duty is imposed, to require relinquishment of the provisions of a will and a selection in lieu of its provisions where it is deemed best for an insane person, its jurisdiction is not exceeded, when exercised, by setting aside and expunging from its records a renunciation and election it deems not for the best interest of an insane ward under its protection.

The income from the property was used for the comfort and support of the widow, as the will directed. There was no necessity for an increase of her income by renunciation of the will, but if the necessity existed it was not asserted and made effective during her life. The attempted renunciation now relied on has no authority of law to support it. Those seeking to renounce had nothing to renounce, for they took nothing under the will. Only those specified

in the statute may exercise the statutory right, and as to incompetent persons the right is subject to the control of the probate court in the exercise of its limited equity powers in their behalf.

Careful consideration has been given the questions presented by the record. In any view that can be taken of them as presented by the facts admitted by the demurrer to the bill, no ground exists for the relief demanded. The circuit court properly sustained the demurrer to the bill. Its decree dismissing the bill for want of equity is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*