(No. 26725.—

FRANK WALTON, Appellee, *vs.* CHARLES H. ALBERS, Receiver, *et al.,* Appellants.

*Opinion filed September 25, 1942.*

FULTON, J., took no part.

JOHN W. WILLIAMS, and MARTIN & GARRETSON, (CHARLES G. BRIGGLE, JR., of counsel,) for appellants.

SCOFIELD, BELL & BELL, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

April 3, 1929, the Harmony State Bank of Denver, Illinois, being in a precarious financial condition, entered into a contract with the Basco State Bank of Basco, transferring, conveying, assigning, setting over, and delivering to the Basco bank substantially all of its assets in consideration of the assumption of its deposit liabilities. The Harmony bank gave its judgment note for $12,500, payable one and one-half years after date with interest at five per cent from maturity, to the Basco bank in order to fully protect the latter against any loss on account of its failure to collect or realize on the personal and real estate loans transferred to it. It was provided that the Harmony bank should not be required to pay any greater sum on the note than necessary to make up the loss, if any, which the Basco bank might sustain on the loans. A representative of the Auditor of Public Accounts was present when the contract was executed. There was, however, no compliance with section 15 of the Banking act then in force (Smith-Hurd Stat. 1927, chap. 16½, sec. 15) which provided: "Any association organized under this act, or any corporation with banking powers organized in pursuance of any general or special law of the State, * * * on depositing with the Auditor an amount of money equal to the whole amount of debts and demands against it, including the expenses of this proceeding, may determine its affairs, distribute its assets among its stockholders, resign its charter or certificate of incorporation, and close up its business, by a resolution passed at a meeting of its stockholders called for such purpose." The Harmony bank suspended operations at the close of business on April 3, 1929. By the time the Basco bank closed its doors on March 8, 1932, the principal amount of the note had been reduced to $6645.43. May 23, 1932, judgment by confession for this amount was rendered in the circuit court of Hancock county in favor of the receiver of the Basco bank and against the Harmony bank. No appeal was taken.

An execution issued on the judgment and, on August 26, 1932, was returned "no property found." In the meantime, on May 26, 1932, the receiver of the Basco bank, seeking to recover the super-added stockholders' liability, filed a complaint in the circuit court of Hancock county against the stockholders of the- Harmony bank, including Frank Walton, who, it appears, owned ten shares of stock and was a director of the Harmony bank when it closed. Walton was served with summons. The stockholders' liability action languished until August 10, 1938, when an amended bill was filed. Later still, on February 1, 1939, the successor receiver of the Basco bank filed a second amended and supplemental bill. April 17, 1939, the court entered a rule against all defendants to plead or answer within ten days. Walton did not plead or answer, his default was entered, and on May 10, 1939, judgment by default was rendered against him for $1000. Walton did not prosecute an appeal. On January 31, 1940, he filed in the circuit court of Hancock county a pleading captioned "Bill of Review or Bill in the Nature of a Bill of Review, or Complaint under the Civil Practice act" against the defendants, the receiver of the Basco bank and the receiver in the stockholders' liability suit. By this action, the plaintiff, Walton, collaterally attacked the judgment rendered against him in the stockholders' liability suit, alleging that the contract of April 3, 1929, was *ultra vires* and void because of a non-compliance with section 15 of the Banking act in effect on the day named. Plaintiff's action rests upon the proposition that if the contract was *ultra vires* and void, as he asserts, the judgment against him in the stockholders' liability suit was likewise void and did not make the receiver of the Basco bank a creditor of the Harmony bank, and, hence, may be attacked either directly or collaterally. Defendants answered, averring that the challenged contract was not *ultra vires;* that the Basco bank was a creditor of the Harmony bank; that the judgment against the Har-

mony bank was valid, and, further, that the judgment against plaintiff in the stockholders' suit was valid. The chancellor dismissed the complaint for the want of equity. Upon appeal, the Appellate Court for the Third District reversed the decree of the circuit court. The Appellate Court has granted a certificate of importance, and the record is before us for a further review.

We do not deem it necessary to decide whether the contract of April 3, 1929, was *ultra vires* and void. The judgment thereon still stands and cannot be here attacked. The decisive issue made by the pleadings is whether the judgment of May 10, 1939, for $1000 against plaintiff is open to collateral attack by his bill of review or bill in the nature of a bill of review. Applicable legal principles are firmly established. The controlling issue is not whether the contract of April 3, 1929, or even the judgment note bearing the same date was void, but is, instead, whether the circuit court of Hancock county, on May 10, 1939, had jurisdiction of the subject matter, the particular proceeding, and the parties in the action in which judgment for $1000 was rendered against plaintiff. If the circuit court had jurisdiction of the subject matter, the particular proceeding, and the parties, its order is immune to collateral attack. As applied to courts, jurisdiction is the legal authority to hear and determine controversies concerning certain subjects. Jurisdiction of the subject matter is the right to hear and determine causes of the general class to which the particular cause belongs. In its application to a certain controversy, jurisdiction is the right to hear and determine the controversy. (*Woodward* v. *Ruel,* 355 Ill. 163; *O'Brien* v. *People ex rel. Kellogg Switchboard Co.* 216 id. 354.) In *Knaus* v. *Chicago Title and Trust Co.* 365 Ill. 588, we said: "Such jurisdiction is conferred by the constitution or by legislative enactment and does not depend upon the sufficiency of the bill of complaint in a particular case, the validity of the demand set forth therein, the regularity of

the proceedings, or the correctness of the decision rendered." A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in a proper proceeding, is not open to impeachment in any collateral action, except for fraud in its procurement, and even if the judgment is voidable and so illegal or defective that it would be set aside on a proper direct application it is not subject to collateral attack so long as it stands in force. (*Baker* v. *Brown,* 372 Ill. 336; *Brown* v. *Jacobs,* 367 id. 545; *People* v. *Sterling,* 357 id. 354; *Miller* v. *Rowan,* 251 id. 344; *Buckmaster* v. *Jackson,* 3 Scam. 104.) The circuit court of Hancock county is a court of general and original jurisdiction. Admittedly, the circuit court has jurisdiction to entertain a representative suit to enforce the liability of bank stockholders. (*Leonard* v. *Bye,* 361 Ill. 185.) It is conceded that the court had jurisdiction of the person of the plaintiff, Walton. Since the circuit court had jurisdiction of the subject matter and of the parties and possessed the power to render the particular judgment, even though erroneous, it is not subject to the collateral attack levelled against it.

Reliance upon *Continental Illinois Nat. Bank and Trust Co.* v. *Peoples Trust and Savings Bank,* 366 Ill. 366, can not avail plaintiff. In a later case, *Groves* v. *Farmers State Bank,* 368 Ill. 35, the challenged contract, as here, was entered into prior to the effective date of the amendments to section 15 of the Banking Act which became effective November 4, 1930. We said: "Each of appellants' motions, filed after the State bank's business was completely liquidated, is predicated, in part, upon the theory that the contract of October 4, 1930, was *ultra vires* and illegal, and, hence, may be attacked at this late date. The contract now challenged was executed before the effective date of the amendments of 1929 to section 15 of the Banking Act. The present case does not, therefore, come within the holding of *Continental Illinois Nat. Bank* v. *Peoples Trust and*

*Savings Bank, supra,* and the agreement of October 4, 1930, would not necessarily be invalid under that decision." We also observed: "The stockholders of the State bank, by answers to Groves' bill could have met the issues five years ago as to the validity of the agreement of October 4, 1930, and whether the national bank was a creditor of the State Bank within the contemplation of the constitution. They elected, instead, to abide by the final and appealable decisions of those issues. The stockholders, by their own inaction, are now foreclosed upon these same issues which they seek to renew on the present appeal." The foregoing observation is singularly pertinent to plaintiff. He was a director as well as a stockholder of the Harmony bank. He could have resisted the stockholders' liability suit on the ground that the agreement of April 3, 1929, was illegal. By his inaction, he is precluded from challenging the validity of the agreement in the present action.

Plaintiff maintains further that the judgment of May 10, 1939, was fraudulent as to him. We deem it sufficient to observe that the record affirmatively discloses that the chancellor correctly followed the latest pertinent pronouncement of this court, *Groves* v. *Farmers State Bank, supra.* Under these circumstances, we fail to see how the judgment assailed could have constituted the perpetration of a legal fraud against the plaintiff, Walton.

Upon the authority of *Groves* v. *Farmers State Bank, supra,* and for the reasons stated in this opinion, the judgment of the Appellate Court must be reversed and the decree of the circuit court affirmed.

> *Judgment of Appellate Court reversed;*
> *decree of circuit court affirmed.*

Mr. JUSTICE FULTON took no part in the consideration or decision of this case.