**Marshall Newman, Appellant, v. Elaine Newman, Appellee.**

### Gen. No. 48,954.

First District, First Division.
June 12, 1963.
Rehearing denied July 31, 1963.

Jacobs, Ribstein & Lieberman, of Chicago, for appellant.

Arthur K. Young, Burton S. Terry and Peter M. Sfikas, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, Marshall Newman, appeals from an order modifying a divorce decree and granting permanent

alimony to his former wife, Elaine Newman, defendant herein.

In February 1959, after four years of marriage and the birth of one child, the parties were divorced. Both parties were represented by counsel at all stages in the proceeding, and the case was heard as a default matter. Plaintiff testified to acts of physical violence by defendant, and he was cross-examined by defendant's counsel. Corroborative testimony was received. At no point in the proceeding was there raised any question with respect to defendant's mental capacity or competence, and at the time of the entry of the divorce decree, defendant had not been declared incompetent by any court.

The decree of divorce awarded custody of the minor child to plaintiff, and incorporated the provisions of a "property settlement agreement" which had been executed by the parties on November 3, 1958.

The "property settlement agreement" provided that plaintiff was to pay to defendant, "as and for her support and maintenance," specified weekly sums (totaling $17,030), over a period of three years commencing December 1, 1958. The agreement further provided that the payments were to cease when fully made "or upon the date of death of the Wife or her remarriage, whichever date shall first occur." The agreement also contained a "release" by defendant, whereby she agreed to relinquish "all claims whatsoever upon the Husband for alimony, support and maintenance, under the laws of the State of Illinois, . . . except the right to demand performance of all the undertakings of the Husband contained in this Agreement." The divorce decree approved and adopted the terms of this agreement, and further decreed that both parties were "forever barred from asserting any rights to dower, courtesy [sic] or alimony against

206

each other, except as provided in the said property settlement agreement."

The decree was entered on February 6, 1959. On May 26, 1959, defendant was adjudged an incompetent, and her brother was appointed her conservator by the Probate Court. On September 18, 1959, defendant's next friend filed a petition asking for leave of court to appear as next friend for defendant, for the purpose of filing a petition on her behalf to vacate the decree of divorce. Plaintiff's motion to strike the petition of the next friend was referred to a master in chancery for hearing and recommendations.

On March 1, 1960, an order was entered giving leave to defendant's next friend to appear for her and to present her petition. The petition, filed pursuant to section 72 of the Civil Practice Act, alleged, in substance, that by reason of mental incapacity, defendant was incapable of exercising sufficient judgment to consent to the entry of the divorce decree or to agree to the property settlement, and thereby "was deprived of the opportunity to defend the suit for divorce." Defendant's petition alleged various instances of hospitalization and psychiatric treatment extending over the period from January 1955 to February 1959, and referred to suicide attempts and insulin shock treatments administered. Finally, the petition alleged that had defendant not been mentally disabled, she would have been able to interpose a meritorious defense to the divorce action, by proving herself not guilty of the acts of cruelty charged as grounds for the divorce. Plaintiff's answer denied a number of the factual allegations in the petition and alleged, in effect, that at all times relevant defendant had been competent.

On November 28, 1960, defendant's next friend filed a new petition, alleging that the petition to vacate the divorce decree, which had been referred to a mas-

ter in chancery, was still pending and undetermined; that "said proceeding is fraught with many uncertainties and will involve considerable expense and certain principal witnesses required to support the said petition to vacate the decree herein are expect to be hostile to the incompetent." It was further stated that "a proposal of settlement has been made [by plaintiff] which, in view of all circumstances, petitioner believes to be the best in the interest of the incompetent defendant that can be obtained," and that upon filing of a petition for instructions to the Probate Court in the matter of the estate of the incompetent defendant, the Probate Court had entered an order on October 26, 1960, "instructing the next friend petitioner herein to proceed with such acts as may be necessary and proper to effectuate the settlement aforesaid and to petition this court to amend the said decree of divorce so as to adopt and approve the aforesaid settlement."

On November 28, 1960, the Circuit Court entered an order modifying the original decree of divorce, by incorporating therein the terms of the settlement offered by plaintiff and approved by the Probate Court on behalf of the incompetent defendant.

In its order modifying the decree, the Circuit Court expressly found that "a serious controversy existed as to the validity of said decree for divorce, which controversy would be protracted and expensive to both parties and fraught with difficulties, and that it is in the best interests of the Incompetent Defendant, the Plaintiff, and the minor child herein that the said settlement proposal be approved by this Court, and the Court finds that the said settlement is fair, equitable and just."

The modification order decreed that plaintiff pay to the incompetent defendant "the further sum of . . . $13,250, in addition to such amounts already paid

in performance of the original decree herein," this sum to be payable in weekly installments of $25 for the period of 10 years and 10 weeks commencing the Monday next following entry of the modified decree. In addition, the $13,250 was made a charge against the estate of plaintiff in the event of his death prior to full satisfaction, and was further made non-defeasible by the death or remarriage of defendant.

On June 12, 1962, defendant filed a new petition, thereby commencing the instant proceeding. This petition alleged that, as she had "had her civil rights restored," and as she was no longer institutionalized, her financial needs had greatly increased. It was further alleged that plaintiff's income had increased since the entry of the modified decree, and that he was able to make "more adequate" provisions for defendant's needs. The petition referred to the $25 weekly payments provided for in the modified decree as "alimony" and prayed that "the Decree of Divorce herein and its modifying order be further modified" to require that plaintiff pay defendant an increased sum per week. Defendant's petition did not question the validity of the modifying order which incorporated the settlement accepted in her behalf by her next friend; she merely asked that these payments be increased to take account of her changed circumstances now that she was no longer an incompetent. Plaintiff answered and denied that court's jurisdiction to modify the decree again, on the ground that the decree provided for a property settlement in lieu of alimony.

Proceeding on the pleadings and record alone, the trial court held (1) that the modification of the decree was of no effect, since "the Probate Court has no jurisdiction here," and (2) that the original decree provided for alimony and not for a property settlement, and to that extent it was therefore modifiable.

After hearing testimony as to the financial status of both plaintiff and defendant, the court entered an order modifying the decree by requiring plaintiff to pay defendant "as and for her permanent alimony the sum of . . . $360 per month." From this order plaintiff appeals.

The question presented is whether the trial court was correct in granting permanent alimony to defendant subsequent to the "modification of decree for divorce" order entered on November 28, 1960.

If the court which entered the first modification of the original decree had jurisdiction of the subject matter, parties, and the particular proceeding, its order is immune to collateral attack. (Baker v. Brown, 372 Ill 336, 23 NE2d 710 (1939).) As stated in Walton v. Albers, 380 Ill 423, 427, 44 NE2d 145 (1942):

> "A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in a proper proceeding, is not open to impeachment in any collateral action, except for fraud in its procurement, and even if the judgment is voidable and so illegal or defective that it would be set aside on a proper direct application it is not subject to collateral attack so long as it stands in force."

Also, the 1960 order should be considered in the light of the rule that "in case of a collateral attack on a judgment or decree all presumptions are in favor of the validity of the judgment or decree attacked, and want of jurisdiction to enter the same must appear on the face of the record to furnish the basis for such attack." Steffens v. Steffens, 408 Ill 150, 153, 96 NE 2d 458 (1951).

■ The 1960 proceeding was commenced as an action under section 72 of the Civil Practice Act, to vacate the divorce decree theretofore entered, on the

ground that defendant was mentally disturbed at the time the decree was entered, and lacked capacity to defend her interests. The original decree having become final and conclusive 30 days after its rendition on February 6, 1959, a section 72 proceeding was the only way in which the validity of the decree could be properly questioned, and the filing of the section 72 petition commenced a new suit, vesting the Circuit Court with jurisdiction to consider the merits of the action. Williams v. Pearson, 23 Ill2d 357, 177 NE2d 856 (1961); Brockmeyer v. Duncan, 18 Ill2d 502, 165 NE2d 294 (1960).

■ Defendant, an incompetent at the time, appeared by her next friend, who was acting pursuant to orders granting leave so to appear which were entered by both the Circuit Court and the Probate Court of Cook County. The appearance of defendant by her next friend, although a conservator had been appointed, does not render her appearance nugatory, since section 124 of the Probate Act (Ill Rev Stats 1959, c 3, § 124) explicitly permits such appearance. Cf., Wascher v. Lundeen, 32 Ill App2d 239, 177 NE2d 440 (1961).

■ Although the right of a guardian, conservator, or next friend to sue for divorce of his ward may be questionable (Pyott v. Pyott, 191 Ill 280, 61 NE 88 (1901)), it is the rule in Illinois that a conservator or next friend may maintain an action on behalf of his ward to vacate and set aside a divorce decree. Bradford v. Abend, 89 Ill 78 (1878); Iago v. Iago, 168 Ill 339, 48 NE 30 (1897).

■ The fact that the 1960 proceeding was settled by consent of the parties does not give rise to any jurisdictional defect in the modification order. Although, as an incompetent, defendant herself was incapable of consenting to the settlement, her rights were protected by both the Circuit Court and the Probate Court. The modification order contained the fol-

lowing finding: that the settlement arrangement was "presented to the Probate Court . . . for instructions and approved by said Court with instructions [to defendant's next friend] to proceed with action in [the Circuit Court] to effectuate said settlement." The Probate Court has statutory authority to permit the compounding or compromise of "any claim or any interest of the ward . . . in any personal estate." (Ill Rev Stats 1959, c 3, § 215.) Our Supreme Court has stated, "the probate court has to a certain extent the powers of a court of chancery over insane persons and their property. The jurisdiction is exercised in the interest of the insane and of infants, properly designated as wards of the court." (Sippel v. Wolff, 333 Ill 284, 291, 164 NE 678 (1928); Davis v. Mather, 309 Ill 284, 141 NE 209 (1923).) In the instant action, the Circuit Court also approved the compromise, expressly finding that the settlement was "fair, equitable and just."

We see no reason why the policy of the law in favor of settlements should not apply to such a case as the one before us. The allegations of her petition were denied by plaintiff's answer, thus posing factual issues. The Circuit Court's finding was that the controversy was serious, and that it would have been protracted and expensive to both parties, and thus fraught with difficulties. We conclude that defendant's next friend had authority, pursuant to the Probate Court's order, to settle the section 72 proceeding.

Finally, defendant objects to the manner of settlement, contending that neither the Probate Court nor her next friend had authority to settle by accepting a property settlement in lieu of alimony. This argument is based on the contention that the original decree provided for the payment of alimony, that the right to alimony is a "personal right," and that a

"personal right" of an incompetent cannot be exercised by a conservator.

■ We agree that certain powers, rights, or elections may be so personal that they cannot be exercised on behalf of an incompetent. In such cases, courts have held that a conservator cannot be authorized to use his discretion to change an act performed by the incompetent prior to his disability. (Chase Nat. Bank of N. Y. v. Ginnel, 50 NYS2d 345 (1944); 3 James, Illinois Probate Law & Practice, § 122.9 (1951, Pocket Part 1962).) Examples of such non-exercisable powers are the right to change a beneficiary on an insurance policy issued to the ward while he was competent (Kay v. Erickson, 209 Wis 147, 244 NW 625 (1932)), or the right to revoke or modify the ward's will, except to the extent necessary to provide for the ward's necessities (Lewis v. Hill, 317 Ill App 531, 47 NE2d 127 (1943), affd 387 Ill 542, 56 NE2d 619 (1944)), or the right to maintain a suit for divorce of the ward (Pyott v. Pyott, 191 Ill 280, 61 NE 88 (1901)).

■ However, when the exercise of a particular power, right, or election—though "personal" in some sense—can be shown to be beneficial to the maintenance and welfare of the ward, courts have, in proper cases, permitted such rights to be exercised on behalf of the ward. (McCartney v. Jacobs, 288 Ill 568, 123 NE 557 (1919).) In Kinnett v. Hood, 25 Ill2d 600, 185 NE2d 888 (1962), our Supreme Court said (p 602):

> "Our probate courts have jurisdiction under their equitable powers to determine whether an incompetent shall take under his or his spouse's will or renounce the provisions of the will. . . . Courts are in agreement that the primary consideration is the best interest of the incompetent."

■■ We believe that the right to alimony cannot be considered a "personal" right in the sense

used; a choice between alimony or a property settlement in lieu of alimony involves no element of personal discretion on the part of an incompetent, and can as well be exercised by the court having jurisdiction over the incompetent's estate. We therefore conclude that the defendant's next friend was acting within his authority in entering into the settlement agreement, pursuant to the order of the Probate Court. We find there is no jurisdictional defect in the November 28, 1960, order. In subsequent proceedings it is binding on the parties and on the trial court.

In substance, the "modification of decree" order of November 28, 1960, sets forth and again approves a property settlement in lieu of alimony, and defendant does not contend otherwise. The decree, as modified, provides for the payment of a sum certain, in weekly installments, over a period of 10 years and 10 weeks, and is nondefeasible by the death of either party or by the remarriage of defendant. We conclude the decree, as modified, bars defendant from asserting any right to alimony. In view of this conclusion, the trial court was in error in granting defendant permanent alimony. Ill Rev Stats 1959, c 40, § 19; Kohler v. Kohler, 31 Ill App2d 151, 175 NE2d 603 (1961).

For the reasons stated, that part of the order appealed from, which awards permanent alimony, is reversed.

Reversed.

BURMAN, PJ, concurs.

ENGLISH, J, dissenting:
I disagree with the majority as to the validity and binding effect of the so-called "settlement" order of November 28, 1960. There is no question but what defendant was incompetent at the time the order was entered, she having been so declared shortly after en-

try of the divorce decree in 1959. This fact of her incompetency must be borne in mind in considering the authority of the next friend and of the courts in approving the "settlement."

I refer to the agreement reached between plaintiff, his lawyer, defendant's next friend, and his lawyer as a "so-called 'settlement'" because it did not settle any of the issues which had been presented to the court by the pleadings. It represented, rather, a complete abdication of defendant's position and, in effect, a withdrawal of defendant's verified petition—the basic pleading in the case.

Defendant's petition, filed under Section 72 of the Civil Practice Act, was the equivalent of a complaint in the proceedings which culminated in approval of the "settlement." This petition, which was never amended or supplemented, and never set down for hearing, alleged that at all times during the original divorce proceeding, when appearance, answer, stipulation to hear as a default matter, and property settlement agreement were presented on behalf of defendant, petitioner, she was under mental disability; that commencing in January, 1955 defendant demonstrated symptoms of mental disturbance; that this condition became aggravated as time went on, and after consulting psychiatrists she was admitted in December, 1957 to the Psychiatric Institute of Michael Reese Hospital; that after her release from that institution she continued to receive psychiatric treatment on the average of four days per week; that she was readmitted to Michael Reese in January, 1958 where she remained and was treated for psychopathology for four weeks; that during such stay in the hospital her mental derangement had become so acute as to require numerous insulin shock treatments; that after her release on about February 15, 1958 she again continued out-patient psychiatric treatment four times a

215

week during the ensuing months (more than a year) until after the divorce decree was entered; that her mental disability thus prevented her from being guilty of the acts of cruelty alleged in her husband's complaint to have occurred on April 10 and May 15, 1958; * that during late 1958 and early 1959 defendant twice attempted suicide, and each time was again confined in the Psychiatric Institute for treatment for the time being; that on March 29, 1959 (the divorce decree having been entered in February) she again attempted suicide and was placed in the Psychopathic Ward of Cook County Hospital, following which she was committed by the County Court to a mental institution, and in May 1959 her brother was appointed conservator of her person and estate by the Probate Court.

Defendant's petition further alleged that the facts above recited concerning her mental disability were known to her husband, to his attorney, and to her own attorney at the time of the divorce hearing and when the property settlement agreement was executed; that thereby a fraud was perpetrated on the court, and a "monstrous injustice" was perpetrated upon the petitioner without any fault on her part.

The sole prayer of the petition was that the divorce decree be vacated. It did not ask for any modification of the property or alimony provisions of the decree.

The petition was verified in its entirety (not on information and belief, but absolutely) by petitioner's next friend who was also a physician and her psychiatrist.

Plaintiff filed answer to the petition denying most of the facts alleged, stating that defendant did not suffer from psychosis but only from anxiety neurosis

---

* The two acts alleged as the grounds for divorce were that defendant threw a china pitcher and cup at her husband, striking him in the shoulder, and on the thigh, causing pain.

216

and temper tantrums; that the alleged suicide attempts were not genuine; that defendant was only after the money of plaintiff and his father; that defendant had entered Michael Reese Hospital merely for treatment of her "unstable temper and for psychiatric marital-counseling advice"; that she was able to handle her affairs during the period in question; and that her attorney had protected her interests at the divorce hearings.*

The majority point out, with citation of appropriate authorities, that a conservator or next friend has no authority to maintain a divorce action on behalf of an incompetent, but does have authority to litigate for his ward to set aside a divorce decree. I agree. The reason for these apparently inconsistent rules is, of course, that they fall on opposite sides of the public policy favoring preservation of marriages.

The petition to vacate the divorce decree (filed by leave of court) sets forth facts which indubitably demonstrate the perpetration of a "monstrous injustice" to defendant and a fraud upon the court, and, if true, would unquestionably require the court to set

---

* This last point is also made by the majority who call attention to the fact that plaintiff had been cross-examined by defendant's counsel. It is interesting to note that the principal testimony of plaintiff on this cross-examination was to the effect that he would interpose no objection "at any time in the future if Mrs. Newman desires custody and the child's welfare dictates and *she is capable of accepting custody."* Does this last clause indicate knowledge by plaintiff of defendant's mental condition as alleged in her petition?

The original divorce property settlement agreement provided that the husband should have custody of the child of the parties, who was then not yet three years old. No reason was stated as to why custody of the child was taken from his mother. Nor did the divorce decree make any finding that the mother was unfit to have custody of her child. Do these facts also indicate knowledge on the part of the husband and both attorneys as to the mental condition of defendant, in corroboration of the allegations of her petition to vacate?

aside the divorce decree. In the light of all the circumstances, then, the next friend was clearly acting within the scope of his powers in presenting these facts to the court, and the court was justified in permitting the petition to be filed by the next friend. As a matter of fact, the nature of the circumstances thus called to the attention of the court was such as to require inquiry by the court in its own interest to determine the truth of the allegations charging fraud upon the court itself as well as upon its incompetent ward. The keeper of the sovereign's conscience could not properly be indifferent under such circumstances; in equity and good conscience it could not properly recognize, as it did, that "a serious controversy existed as to the validity of said decree for divorce," and then dismiss the matter from conscience, as it did, with an adjustment of money matters, a collateral question of secondary importance only, and one not even mentioned in the pleadings.

If there had been a hearing on defendant's petition, the question of alimony could have been reached by the court only after first deciding against defendant on the issue of her incompetency, as raised by the pleadings. By attempting to modify the alimony provisions of the decree without first conducting a hearing on the questioned validity of the divorce itself, the next friend, counsel, and both courts, in my opinion, so far departed from their obligations to the incompetent as to place the "settlement" beyond the authority of the parties to contract or the courts to approve. The only justification for ignoring the issue of the pleadings, as set forth in the court's order, was that the controversy over the validity of the decree "would be protracted and expensive to both parties and fraught with difficulties." Considering the protection, from all persons concerned, to which the incompetent was entitled under the law, I find this lamentably insufficient to sustain the action taken.

Alimony rights may or may not be so personal to the incompetent as to be beyond the scope of the next friend's authority to compromise, as argued strenuously pro and con by the parties in this court. Surely, however, there can be nothing more personal than the incompetent's right to maintain or restore her marital status. This right, therefore, cannot be waived by anyone on her behalf. (See authorities cited in the majority opinion.) Once having stated a cause of action under the oath of the next friend, with a pleading sufficient to vacate the divorce decree, to ignore it thereafter is, in my opinion, the equivalent of seeking a divorce on behalf of the incompetent, or voluntarily failing to require strict proof in her defense. Either such action would, of course, be outside the powers of a conservator or next friend. And any act which transcends the authority of such a person acquires no validity through approval or ratification by the Probate or any other court. (Nonnast v. Northern Trust Co., 374 Ill 248, 259, 29 NE2d 251.)

When all parties are competent, I still have doubts as to the propriety, or even the legality, of achieving property or alimony agreements which result in withholding from the court facts available to one side or the other which might affect proof of the underlying grounds for divorce. The possibility of fraud upon or abuse of the court is always present in this situation. I have no doubt, however, that such a procedure is improper and illegal when one of the parties is under mental disability.

I would remand for a hearing on the merits of defendant's petition to vacate the divorce decree.