CROOKS TERMINAL WAREHOUSES, INC., Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, Defendant and Counterplaintiff-Appellant and Cross-Appellee.—(MORTIMER DEVELOPMENT CO., Third-Party Defendant.)

First District (1st Division)    No. 79-704

Opinion filed April 28, 1980.

Myron Lieberman, Robert L. Schlossberg, Robert K. Blain, and James P. Chapman, all of Chicago (Lieberman, Levy, Baron & Stone, Ltd., and Chapman & Royce, Ltd., of counsel), for appellant.

David A. Stall and Joseph A. Girardi, both of Chicago (Sundheim & Stall, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

In May 1978, Crooks Terminal Warehouses, Inc. (plaintiff), as lessee, and American National Bank and Trust Company of Chicago, as trustee under trust #39338 (defendant), as lessor, entered into a 10-year 8-month net industrial building lease of a large industrial building in Melrose Park, Illinois. In November, plaintiff filed a complaint for declaratory judgment seeking a determination that the lease was terminated by plaintiff in accordance with its terms. Defendant denied the essential allegations of

the complaint, asserted several affirmative defenses and filed a counter-claim for tax deposits claimed to be due under the lease. Later that month, defendant filed a motion for summary judgment (a) on the complaint on the sole ground that plaintiff was in default under the lease for failure to make those tax deposits and, therefore, was not entitled to terminate the lease, and (b) on its counterclaim for the tax deposits. Plaintiff resisted the motion on the ground that factual issues were involved. Plaintiff did not file any motion for summary judgment. In February 1979, the trial court entered summary judgment for defendant on its counterclaim for the tax deposits, but awarded plaintiff a setoff of the deposit of the one month's rent which defendant was holding. The court failed to grant defendant summary judgment on the complaint, holding that plaintiff's failure to make tax deposits did not bar plaintiff from terminating the lease. The court then, despite the fact that plaintiff had not filed a motion for summary judgment and despite the fact that defendant was not given an opportunity to be heard as to those affirmative defenses which it had reserved, entered a "cross motion for summary judgment" on the complaint in plaintiff's favor, holding that the lease was terminated as of December 31, 1978.

Defendant appeals from (a) the "cross motion for summary judgment" granted plaintiff, (b) that portion of the order awarding plaintiff a setoff and declaring that the lease is null and void as of December 31, 1978, and (c) the court's refusal to enter summary judgment in defendant's favor on the complaint. Plaintiff cross-appeals from the summary judgment entered for defendant on the counterclaim.

The record discloses:

The lease was entered into as of May 1, 1978. Defendant retained Chicago Properties Corporation (Chicago Properties) to manage the property. Under the lease, plaintiff was to pay a total of $2,582,160 in fixed rentals at the rate of $20,621.42 per month during the period from January 1, 1979, to December 31, 1983, and $22,414.58 per month thereafter. Plaintiff took possession of the premises and began using them in its warehousing operations during May 1978. Plaintiff vacated the premises on December 29, 1978.

The lease required plaintiff to deposit the rent for the month of January 1979 at the beginning of the lease. This deposit of $20,621.42 was made. Plaintiff was permitted to occupy the premises from May 1978 until December 31, 1978, without paying any fixed monthly rent for that period.

Defendant, as lessor, was to do the work necessary to obtain a certificate of occupancy from the village of Melrose Park. Plaintiff was given the right to terminate the lease after November 1, 1978, if the village

of Melrose Park was not prepared to issue a certificate of occupancy on or before that date. Section 2.2 of the lease provided:

"* * * Notwithstanding anything to the contrary herein contained, if the Village of Melrose Park is not prepared to issue a final Certificate of Occupancy with respect to the Premises by November 1, 1978 (or, if any one or more Force Majuere Events shall have occurred, by such later date ('Second Extended Date') which is subsequent to November 1, 1978, by the number of days Lessee [sic] is delayed in performing the Work by the occurrence of any Force Majuere Events), and if Lessee has not theretofore defaulted under this Lease and any guarantor hereof has not theretofore defaulted under its guaranty, Lessee shall have the right (as its sole remedy) to terminate this Lease by written notice to Lessor given within the 30 day period subsequent to November 1, 1978, or the Second Extended Date, whichever is later, but in any event given not later than the date said Village is prepared to issue said Certificate, * * *."

Plaintiff took possession in May 1978 with the expectation that defendant would perform the work necessary to obtain a final certificate of occupancy as soon as possible.

The lease was a "net lease" and plaintiff was required to pay as additional rent all expenses of the premises, including real estate taxes for the period from May 1, 1978, to December 31, 1978. To secure the payment of real estate taxes and its other obligations under the lease, plaintiff was required to make tax deposits on the first day of each month, starting in May 1978, in an amount equal to 1/12 of the amount of the 1978 taxes as reasonably estimated by defendant. Section 1.4(b) of the lease provided:

"To secure Lessee's obligations under the Lease, including, without limitation, its obligation to pay Taxes, Lessee shall deposit with Lessor on the same date as each installment of fixed rent is payable (plus the first days of each calendar month during the period from May 1, 1978 to December 31, 1978), an amount equal to 1/12 of the amount of the Taxes, as reasonably estimated by Lessor, for the fiscal period of the applicable governmental authority (presently the calendar year) in which said date occurs, said deposits to be made so that Lessor shall have on deposit by the end of each fiscal period the estimated amount of the Taxes payable by Lessee on account of said fiscal period. * * *"

An estimate of the amount of 1978 taxes was necessary because the actual amount would not be known until the middle of 1979. To assure that plaintiff would ultimately pay only the actual amount of taxes assessed,

the lease provided for adjustments once the actual amount of the taxes became known.

A supplemental lease provision required plaintiff to retain counsel to obtain the proper legal assessment for the property. No tax estimate was made by defendant before August 15, 1978. The monthly deposit was estimated to be $4482.50. Although requested, plaintiff made no tax deposits.

In September 1978, the assessor's office notified Chicago Properties that the assessment on the property had been increased from $452,414 to $1,110,860. Defendant then wrote plaintiff informing it of the increase and once again requesting that the tax deposits be made, now in the increased amount of $10,000 per month. Plaintiff made no deposits. In November 1978 the assessor changed the assessment again and lowered it to the original figure of $452,414. Defendant again notified plaintiff that the deposits were due and also informed it of the reduction to the original estimate of $4,482.50 per month. No deposits were made.

The certificate of occupancy was not issued by November 1, 1978. On November 2, 1978, plaintiff served a notice to terminate the lease pursuant to section 2.2. On the same day, defendant responded to the notice, stating that plaintiff had no right to terminate because of several defaults by plaintiff, including plaintiff's failure to make any of the tax deposits required under the lease. On November 10, 1978, the village of Melrose Park issued the certificate of occupancy. In it a reference was made to an agreement by Chicago Properties that the unfinished work would be completed by June 1, 1979. On December 5, 1978, work was still in the process of being scheduled.

Plaintiff filed its complaint for declaratory judgment seeking a declaration that the lease was terminated in accordance with its terms for failure of defendant to complete work necessary to obtain a certificate of occupancy by November 1, 1978, as contemplated by the lease.

Defendant answered and filed a counterclaim for the unpaid tax deposits. In its answer, defendant admitted that the work was to be done and that the certificate of occupancy was not issued on November 1, 1978, but denied the other allegations of the complaint and also set forth numerous defenses. One defense was that plaintiff's failure to make the required tax deposits constituted a default and that, therefore, plaintiff did not have the right to terminate pursuant to section 2.2. Other defenses in the answer were that because the village was prepared to issue a certificate of occupancy by November 1, 1978, plaintiff was not entitled to terminate and that, even if the village was not prepared to issue a certificate of occupancy by November 1, 1978, it would have been due to matters beyond defendant's control. Further, it would be inequitable to permit plaintiff to terminate because of the nine-day delay in obtaining a

certificate of occupancy for the reasons that (a) plaintiff had used and occupied and had full benefit and enjoyment of the premises and had subleased a portion thereof since May 1978; (b) defendant had expended approximately $35,000 in work required to be done by it under the lease for the benefit of plaintiff; (c) the nine-day delay in issuance of the certificate of occupancy did not interfere with plaintiff's use, occupancy, benefit or enjoyment of the premises; (d) time was not of the essence with respect to when the village was prepared to issue a certificate of occupancy and the nine-day delay was not material; and (e) plaintiff is using the nine-day period as an excuse to avoid its obligations under the lease.

Subsequently, defendant moved for summary judgment on the complaint on the sole ground that plaintiff was in default for failure to make the tax deposits and, therefore, was not entitled to terminate the lease. Defendant also moved for summary judgment on its counterclaim for the tax deposits. Plaintiff resisted on the ground that factual issues were involved and did not file any motion for summary judgment.

The trial court granted defendant's motion for summary judgment on its counterclaim in the amount of $35,860, the estimated amount of taxes requested by defendant through December 31, 1978. Against this, the court awarded plaintiff a setoff of the $20,621.42 deposit it had made of the January 1979 rent. The court refused to hold that the lease had not been terminated and, although plaintiff had not moved for summary judgment, the court ruled:

"Enter a cross Motion for Summary Judgment on behalf of the plaintiff Crooks Terminal Warehouses Inc.

I find that the lease was terminated by breach which goes to the essence of the lease in the failure to provide the certificate of occupancy permit as provided in Section 2.3 [2.2] of the lease and direct further that the rents heretofore deposited by plaintiff Crooks Terminal Warehouses Inc. be determined to be set off against the taxes and all other provisions of the lease. Draw your order."

Defendant appeals from (a) the "cross motion for summary judgment" granted plaintiff, (b) that portion of the order awarding plaintiff a setoff and declaring that the lease is null and void as of December 31, 1978, and (c) the court's refusal to enter summary judgment in defendant's favor on the complaint. Plaintiff cross-appeals from the summary judgment entered for defendant on the counterclaim.

Defendant argues that the trial court erred in granting a "cross motion for summary judgment" in favor of plaintiff on plaintiff's complaint because (a) the court had neither the power nor the authority to grant a motion which had not been made, (b) as a matter of law,

plaintiff's default under the lease precluded its termination of the lease, and (c) the court misinterpreted the provisions of the lease. Defendant also argues that because the court erred in entering a "cross motion for summary judgment" on plaintiff's complaint, it also erred in awarding plaintiff a setoff in the amount of $20,621.42 for the January 1979 rent deposit againt defendant's judgment for the amount of taxes required to be deposited through December 31, 1978. If the lease was not terminated as of December 31, 1978, plaintiff was not entitled to a return of the January 1979 rent.

■■ We agree with defendant that the court had no authority to enter summary judgment for plaintiff for the reason that plaintiff had made no motion for summary judgment. Section 57 of the Civil Practice Act requires such a motion. Ill. Rev. Stat. 1977, ch. 110, par. 57.

Plaintiff claims that, because plaintiff had filed a complaint for declaratory judgment, the court's reference to a "cross motion for summary judgment" for plaintiff at most was a mere defect in nomenclature, rather than substance. We disagree. A summary judgment under section 57, and a declaratory judgment under section 57.1 (Ill. Rev. Stat. 1977, ch. 110, par. 57.1) are separate procedures for different purposes. The distinctions should not become blurred. To allow that to happen will raise the same problems which have beset motions under section 45 and section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, pars. 45, 48). See *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.

Plaintiff further claims that a trial court can dispense with the filing of a cross motion for summary judgment. It relies on Federal cases and cases from other States. However, even in the Federal system or in other State courts under their statutes and rules where a court can dispense with cross motions for summary judgment, care must be taken to safeguard the other party's right to show a material fact question. 2 Moore's Manual §17.13 (1972); *Thomas v. Transport Insurance Co.* (Tenn. 1976), 532 S.W.2d 263.

■■ The purpose of summary judgment procedure is not to try an issue of fact, but rather to determine whether a question of fact exists. (*Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 635, 295 N.E.2d 41.) Summary judgment is "a remedy to be awarded with some caution so as not to preempt the right to a trial by jury or the right to fully present the factual basis for a case where a material dispute may exist." (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 87, 243 N.E.2d 40.) The pleadings, affidavits, exhibits and depositions should be construed strictly against the party moving for summary judgment and liberally in favor of the opponent. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 93, 392 N.E.2d 675.) If there

is a genuine issue as to any material fact, the motion should be denied. *Carlson v. Prestige Casualty Co.* (1975), 28 Ill. App. 3d 926, 930, 329 N.E.2d 477.

Defendant argues that, while each of its additional defenses involves questions of fact which made their resolution inappropriate for disposition on defendant's motion for summary judgment, the question of whether plaintiff was precluded from terminating the lease as a result of its failure to make the tax deposits does not involve any factual questions. We disagree.

Plaintiff argues that the essence of the lease was the supplying by defendant of a building which so met the requirements of the village that a certificate of occupancy would issue and that the making of tax deposits was not of the essence and did not constitute a default under the lease. To the contrary, defendant's position is that the tax deposits were of the essence because they constituted the only consideration plaintiff was required to pay for its occupancy of the building from May 1978 until December 31, 1978. If the plaintiff's view of the lease is correct, then the failure of the tax deposits could be construed not to be a default under the lease. On the other hand, if defendant's position is correct, a default occurred. These contentions raised a genuine issue as to a material fact and precluded the entry of summary judgment, both on defendant's counterclaim and on plaintiff's "cross motion for summary judgment." Further, if the failure to make the tax deposits did not constitute a default, defendant's other defenses, including whether the village was "prepared" to issue the certificate by November 1 and whether the November 1 date was extended because of matters beyond defendant's control, raised genuine issues of material fact. They, as well as other defenses, were reserved by defendant. Defendant should be given the right to be heard on them.

For these reasons, the trial court erred in granting summary judgment for defendant on its counterclaim, in setting off plaintiff's one-month rent deposit and in granting plaintiff's "a cross motion for summary judgment" finding that the lease was terminated as of December 31, 1978.

The judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent with the views here expressed.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.