SWAP SHOP, INC., Plaintiff-Appellant, *v.* M & R AMUSEMENT CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-2062

Opinion filed November 13, 1981.—Supplemental opinion filed on denial of rehearing December 28, 1981.

Gann, McIntosh, Flaherty & Parker, of Chicago (Marovitz, Powell, Piser & Edelstein, of counsel), for appellant.

David R. Herzog, of Layfer, Cohen, Handelsman & Mora, Ltd., of Chicago (Fred F. Herzog, of counsel), for appellees.

JUSTICE WILSON delivered the opinion of the court:

Plaintiff appeals from an order of the trial court dismissing its six-count amended complaint by summary judgment against Samuel T. Cohen, individually and as agent of Harris Trust and Savings Bank, Sara W. Cohen, individually and as trustee under Samuel T. Cohen Family Trust; and Dorothy Berger (hereinafter all referred to as Cohen); and on the court's own motion dismissing count 4 only of the amended complaint as to M & R Amusement Corporation, Double Drive-In Corporation, M & R Theatres, Inc., Raymond J. Marks, Martin G. Rosenfield, Richard A. Rosenfield, Louis H. Marks, Jerrold Marks (hereinafter all referred to as M & R). The pertinent facts follow.

Counts 1-4 of the complaint allege, essentially, interference with plaintiff's business, unfair competition, and conspiracy. Count 5 alleges fraudulent misconduct, and count 6 alleges a joint venture and defendants' subsequent deprivation of plaintiff's share of business. In support of these allegations, plaintiff's submission of supporting documents indicates that in 1969, it subleased from M & R the premises of the Double Drive-In

movie theatre for its flea market business during the daylight weekend hours. The term of the lease was for five years as a percentage rental based on plaintiff's gross revenues, which were derived from the stall charges paid by its sellers and the admissions fees of shoppers. When Cohen, the lessor, learned of this sublease in 1969, he negotiated with M & R to receive 35 percent of all rentals that M & R received from plaintiff.

Plaintiff and M & R signed a new sublease in April 1974, providing for an expiration date of April 1982, and containing a clause permitting M & R, upon 90 days prior written notice, to terminate this sublease prior to its expiration date. Plaintiff further states that M & R agreed to waive their right to exercise this termination clause in consideration of the following:

(1) In 1974, plaintiff made improvements on four acres of land and installed a new entrance gate at one of the Double Drive-In theatres;

(2) In 1972, plaintiff met with M & R and Cohen in Cohen's office for the purpose of discussing an additional 22 acres of land with the proposal of improving it and the original leased premises for use in connection with the flea market. Plaintiff indicated at the meeting that it could not make these improvements unless the premises would be available to it in connection with the flea market business for at least a term of five years. M & R allegedly agreed to these conditions and M & R sent plaintiff a copy of a letter from Cohen dated May 7, 1975, the terms of which were that Cohen agreed to lease the additional acreage for a five-year term; with the cost of improvements and taxes to be the expense of M & R and plaintiff. No reference was made in the Cohen letter to M & R of the "cancellation clause" discussed at the meeting, and M & R's cover letter to plaintiff stated that they were not sure whether they should bring it up at this time;

(3) Plaintiff successfully defended against an injunction action brought by the City of Chicago to enjoin the use of the flea market at the Double Drive-In; and

(4) In 1976, plaintiff made additional improvements on the leased premises.

In September 1977, M & R sent notice to plaintiff that the sublease would be terminated as of December 31, 1977. Plaintiff stated that it informed Cohen of the termination notice and that thereafter Cohen and M & R renegotiated the existing lease on the Double Drive-In premises and extended its term effective January 1, 1978, to December 31, 1998. The new lease provides that Cohen receive 35% of the net income realized by Double from its operation of the flea market. M & R reopened the flea market in the spring of 1978 without disclosing that M & R would now be

operating the flea market and further, M & R secured plaintiff's customer lists and solicited these customers to patronize the flea market. The Cohen documents submitted in support of their motion for summary judgment indicate that Cohen was unaware of the sublease prior to 1969 and had no relationship with plaintiff. When he learned of the additional use of the leased premises in 1969, he insisted that M & R pay a rental charge for such use as it was not contemplated in the original lease. From 1969 until the end of 1975, all checks for rent for the operation of the flea market came from Double Drive-In. After this time, he received checks made payable to Double Drive-In from plaintiff and endorsed over to him as agent for the landlord.

In May 1975, Cohen did meet with plaintiff and M & R at M & R's insistence, to discuss the additional leasing of land for use in plaintiff's business. Cohen indicated that he did not want to create a relationship with plaintiff and his relationship was only with M & R as their lessor. In November 1975 he received a check from plaintiff, representing the landlord's share of the flea market operation receipts for the period October 1 through October 31, 1975; however, this was returned to M & R with a letter dated December 1, 1975, in which he indicated all checks for rentals due must come from M & R, as the sole lessee. M & R's acknowledgment in a return letter dated December 10, 1975, confirms Cohen's intent not to become involved in any way with the operations of the flea market. He was informed by plaintiff in late 1977 of M & R's intent to terminate the sublease, but he assured plaintiff this was his first notice of this action and he was not a part of it. When M & R informed him that they would be operating the flea market in February 1978, the new lease provided that he would receive 35% of the net income realized by M & R. The new lease was not signed until spring 1978 even though it encompassed the period beginning January 1, 1978.

Opinion

Plaintiff initially contends that issues of material fact exist which precluded the granting of summary judgment. It is their contention that a material issue of fact was presented from its pleadings and supporting documents which was not countered by the Cohen documents denying his involvement in the operation of the flea market.

Summary judgment is only appropriate if the pleadings, depositions, affidavits, and other documents show that the movant is entitled to this remedy as a matter of law. (*Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 415 N.E.2d 1099.) Summary judgment is not designed to try issues of fact (*Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241); as such, the right of the moving party must be clear,

undisputed, and free from doubt. (*Kocjancich v. Bridges* (1981), 93 Ill. App. 3d 550, 417 N.E.2d 694.) Pleadings and supporting documents are strictly construed against the movant and liberally construed in favor of the nonmovant. *Crooks Terminal Warehouses v. American National Bank & Trust Co.* (1980), 83 Ill. App. 3d 693, 404 N.E.2d 889.

The operative facts which are crucial to a determination of the appropriateness of summary judgment in this instance are the May 7, 1975, meeting and the events transpiring subsequently which would indicate involvement by Cohen in plaintiff's operation.

Plaintiff alleges Cohen conspired with M & R to breach its contract with plaintiff. Plaintiff's documents point to the fact that Cohen was in attendance at the May 1975 meeting where M & R agreed to waive their right to exercise the termination clause. However, plaintiff's affidavits and depositions do not establish that Cohen also agreed. In fact, the Cohen documents indicate that he made it clear at the meeting that his relationship was one only of lessor to his lessee, M & R. His subsequent letter to M & R agreeing to lease the additional premises does not establish his connection with plaintiff. This letter merely recites the terms for leasing the additional premises and was only forwarded to M & R. There is no mention in the letter of plaintiff's requirement of waiver of the termination clause or any indication of his intent to be involved in the flea market operation. Further, M & R's cover letter to plaintiff, enclosing a copy of this letter, does not indicate Cohen's acquiescence to plaintiff's conditions. Cohen had no further contacts or communications with plaintiff until he was notified by plaintiff in late 1977 that M & R had given notice that the lease would be terminated as of the end of that year. Cohen's disinvolvement in any relationship with plaintiff is further buttressed by the fact that when he received a rental check directly from plaintiff in late 1975, *he returned the check to M & R,* with a cover letter stating that his relationship was only with M & R and requested that they forward a check to him. Cohen indicated that he never saw the sublease agreement and was uninformed as to the nature of the termination provision in the lease. His denials of involvement in the operation of the flea market are uncontested and uncountered by plaintiff's documents.

■■■ Based on the record before us, plaintiff has not alleged sufficient facts which indicated Cohen conspired to intentionally and maliciously induce M & R to breach their contract (*Ramsey v. Greenwald* (1980), 91 Ill. App. 3d 855, 414 N.E.2d 1266; *Mitchell v. Weiger* (1980), 87 Ill. App. 3d 302, 409 N.E.2d 38), or tortiously interfered with plaintiff's relationship with M & R. (*Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 366 N.E.2d 319.) Further, no allegations establish that Cohen may be liable for M & R's breach of its sublease. "The fact that a

landlord has consented that his tenant may sublet the premises does not render him liable for a breach by the tenant of his contract, where the tenant has no authority to act as his agent." *Arendt v. Lake View Courts Associates* (1977), 51 Ill. App. 3d 564, 566, 366 N.E.2d 1096, citing 51C C.J.S. *Landlord & Tenant* §48(1)(a), at 143 (1968); *Ford v. Jennings* (1979), 70 Ill. App. 3d 219, 387 N.E.2d 1125.

The "economic benefit" plaintiff argues Cohen received from the sublease was only additional rent charged M & R for the additional use of the premises not contemplated in the original lease.

■■ Similarly, the record is devoid of facts which suggest that a joint venture existed. A joint venture is an association of two or more persons to carry out a single enterprise for profit. (*Prassas v. Nicholas W. Prassas & Co.* (1981), 94 Ill. App. 3d 311, 418 N.E.2d 904.) There must be a community of interest in the performance of the common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy, and a right to joint control. (*Petry v. Chicago Title & Trust Co.* (1977), 51 Ill. App. 3d 1053, 367 N.E.2d 385.) A fiduciary relationship exists between members of a joint venture. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380.) The record is deplete of facts indicating Cohen directed and governed the policy or operation of the flea market or intended such or that any fiduciary relationship existed between Cohen and plaintiff.

Plaintiff's charge of unfair competition is likewise not supported in the record. The tort of unfair competition depends upon the likelihood of confusion as to the source of plaintiff's and defendant's goods. (*National Football League Properties, Inc. v. Consumer Enterprises, Inc.* (1975), 26 Ill. App. 3d 814, 327 N.E.2d 242, *cert. denied* (1975), 423 U.S. 1018, 46 L. Ed. 2d 390, 96 S. Ct. 454.) Plaintiff attempts to impute the alleged misconduct of M & R to Cohen in stating that M & R, after securing its customers' list and soliciting them, advertised that the flea market would re-open in 1978, without disclosing that M & R would now be managing the flea market. However, Cohen denied any type of involvement in the flea market operation either with plaintiff or M & R and plaintiff's documents do not support a different conclusion. We have already concluded that no joint venture existed, and absent such facts, M & R alleged activities cannot be imputed to Cohen, and thus there is no basis for this charge against Cohen.

■■ Since plaintiff's charge of conspiracy against Cohen has no basis in the record, count 4 against M & R was properly dismissed on the court's own motion. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 413 N.E.2d 1299.

Accordingly, we affirm the order of the trial court granting summary

judgment on all counts as to the Cohen defendants and on count 4 as to M & R.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE WILSON delivered the opinion of the court:

■■ Upon denial of petition for rehearing, Swap Shop, Inc., in its petition for rehearing, has contended that failure of M & R, appellee, to file a brief or appearance justifies pro forma reversal. We disagree. It is well-established that reversal is not automatic in the event appellee fails to file a brief. A considered judgment of the trial court should not be set aside without some consideration of the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493; *Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 410 N.E.2d 441.

■■ Swap Shop, Inc. further contends that there has been a misapprehension of pleadings and facts in the record in affirming the trial court's dismissal of count IV of the amended complaint as to those several defendants collectively referred to as M & R. They assert that we failed to address the issue that an unlawful combination among the M & R defendants existed, independently of the so-called Cohen defendants. However, plaintiff did not properly preserve this issue for review, either at the trial level or on appeal. Thus, Swap Shop, Inc., has waived consideration of the merits of this argument. *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032; *Walker v. Board of Police & Fire Commissioners* (1979), 77 Ill. App. 3d 958, 397 N.E.2d 2.

Petition for rehearing is denied.

SULLIVAN, P. J., and LORENZ, J., concur.