CLAUDIA BERRY, Plaintiff-Appellant, v. THE HABITAT COMPANY *et al.*, Defendants (General Parking Corporation, Defendant-Appellee).

First District (5th Division)   No. 85—0887

Opinion field January 23, 1987.

Robert A. Clifford & Associates, and Corboy & Demetrio, P.C., both of Chicago (Robert P. Sheridan, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Ronald L. Krammer, and Joanna C. New, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, the victim of an assault and attempted rape in the underground parking garage of the building where she resided, instituted a negligence action against the owners of her apartment complex, the operator of the parking garage, and her assailant, alleging that the corporate defendants had failed to use due care in the maintenance of the parking facility. The circuit court granted summary judgment only as to the corporate defendant responsible for the garage's parking operations. Plaintiff appeals from the summary judgment on the grounds that (1) the trial court improperly viewed the case in terms of the law of premises liability; (2) the case cited by defendant as controlling did not actually support the merits of defendant's position; and (3) the trial court virtually ignored and thereby failed to apply the proper procedural law in determining whether to grant the summary judgment motion.

For the reasons stated below, we reverse.

Plaintiff, Claudia Berry, and her husband were residents of the River Plaza apartment complex from May 1979 through August 1982. The couple signed leases both for a residential apartment and a parking space for their car at the underground facility in the building. The garage, which provided both public and private parking facilities, consisted of four levels. Level 1 (G1), the top level, was reserved exclusively for public parking. Level 2 (G2) was used by employees of the Sun-Times, located immediately adjacent to the River Plaza complex. Levels 3 and 4 (G3 and G4), the two bottom levels, were set aside for tenant parking.

On January 27, 1982, while in the tenant parking area of the garage, plaintiff became the victim of an assault and attempted rape. As a result of the attack, plaintiff initiated a lawsuit against the Habitat Company (hereinafter referred to as Habitat), the designated agent of the complex and lessor of the tenant parking spaces, General Parking

Corporation (hereinafter referred to as General Parking), the managers of said garage operations, and Darryl K. Matthews, her assailant. Plaintiff's amended complaint, filed on January 3, 1984, alleged in relevant part that defendant General Parking "operated, managed, controlled and provided security" for the parking facility where the attack had occurred and that its failure to maintain a pre-existing security system and to keep the entrance door leading to the bottom two levels of the facility locked had caused her to sustain injuries of a personal, pecuniary, and permanent nature.

Defendant General Parking attacked the amended complaint by moving for summary judgment. Attached to said motion were copies of plaintiff's residential and parking leases with Habitat, the deposition of plaintiff, and the affidavit of John W. Hammerschlag, an employee of General Parking. Plaintiff filed a response along with various sworn depositions. These depositions revealed, among other significant facts, that (1) aside from the singular vehicular entrance to the garage, maintained as a checkpoint by defendant, there was a door in G2 leading to a stairwell which connected level G2 with the lower two floors; (2) defendant parking company kept a total of two attendants on duty to service the parking operations, one of which was positioned at the main entrance and the other in level G2; (3) the entrance door at level G2 had sometimes been left unlocked and an alarm system, installed for security purposes prior to defendant assuming duties of the operations of the garage, was no longer working; (4) the lower two levels of the garage could only be accessed through the vehicular entrance, the stairwell door on G2, or the tenants' elevator operating directly from the lobby of the security-guarded building; (5) in October 1981 General Parking took over the operation of the garage pursuant to a contract with Habitat, but refrained from actively operating all floors at that time because of a delay with its supplier of parking equipment; and (6) as of June 1982 defendant was actively operating all levels of the facility.

Following a hearing on the motion, summary judgment was entered in favor of defendant General Parking. It is from that order that this appeal is taken.

OPINION

The sole issue on appeal is whether summary judgment was properly granted by the trial court.

■■ We first consider plaintiff's contention that the trial court, in granting defendant General Parking its motion, improperly viewed the case in terms of the law of premises liability. The duty imposed on

an owner or occupier of land to one who comes upon the premises is limited in that it only arises with the knowledge of danger and the likelihood of injury. (*Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 428 N.E.2d 662.) The record in the instant case reveals that in its motion for summary judgment the defendant solely relied on landlord/tenant cases to support a limited liability argument. Defendant's attempt to apply the laws relating to ownership, however, is patently misplaced. Rather than being owner of the property, defendant merely came to control the premises for the specific purpose of managing and securing it. There is nothing in the record that would lead us to conclude that defendant, by virtue of its managing capacity, should be allowed to stand in the shoes of a landlord or be subject to the standard of care normally associated with ownership of the land. We thus agree with plaintiff that defendant was improperly allowed to benefit from rules of law which have no relevance or applicability to its particular case.

We next consider whether the case cited by defendant as controlling actually supported the arguments advanced in the summary judgment motion. Central to the *Taylor v. Hocker* decision, the case under scrutiny here, was the issue of whether defendant shopping mall owner had a duty to protect shoppers from criminal attacks. Plaintiffs in *Taylor* had been attacked by an unknown assailant upon returning to their car in the mall's parking lot. In granting defendant summary judgment, the *Taylor* court noted that, as owner of the premises, defendant's duty to protect shoppers in its parking facilities could only arise with the knowledge of danger and the likelihood of injury. Since there had been no prior history of criminal attacks in the mall's parking lot, defendant could not be held liable for the subject occurrence. The court further observed that while defendant in *Taylor* had contractually undertaken to provide security for the mall, it was not bound to provide so much security as to insure shoppers there would be no attack.

*Taylor* can be distinguished most readily from the instant case on the basis that defendant General Parking was not the owner of the premises. Having been analyzed in terms of the laws relating to ownership, the *Taylor* case can have little or *no* direct applicability to the fact of this case. Second, the record reveals that the subject parking facilities had experienced frequent criminal activity over a period of years and that management had been informed of the occurrence of such incidents. In *Taylor*, the court made clear that:

"where there are factual allegations indicating an awareness on the part of the owners or operators of a history of assaults in

the parking facilities provided to business invitees [citation], or where the facts suggest notice that the area is frequented by undesirable characters [citation], liability may arise and summary judgment would be inappropriate." (101 Ill. App. 3d 639, 643, 428 N.E.2d 662, 665.)

As operators and providers of security to the subject parking facilities, General Parking was likely to have been informed of the past and ongoing criminal activities. Such notice, as the *Taylor* court suggests, would be certain to give rise to liability, thus rendering summary judgment improper. Finally, unlike *Taylor*, plaintiff does not take the position that defendant General Parking should be a guarantor of her safety. Rather, plaintiff claims that, as to all those who parked in levels G3 and G4, defendant had a duty to merely act reasonably under the circumstances. This meant keeping the subterranean entrances to level G2 closed to undesirables, a task which would entail, at the very least, maintaining the door leading down to the two lower parking levels locked at all times. Given the frequency of prior criminal activity in the facilities, defendant does not appear to have undertaken reasonable security measures. As such, it failed to provide reasonable security consistent with the management and control it voluntarily assumed as operators of the facilities. For all the foregoing reasons, we agree with plaintiff that *Taylor v. Hocker* failed to support the merits of defendant's case.

■ Because summary judgment is considered a drastic way to dispose of litigation, courts are apt to award it only with extreme caution. (*Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 430 N.E.2d 536.) A court entertaining such motion is required by law to construe the pleadings as well as the supporting documents strictly against the movant and liberally in favor of the opponent. (*Crooks Terminal Warehouses, Inc. v. American National Bank & Trust Co.* (1980), 83 Ill. App. 3d 693, 404 N.E.2d 889.) When, upon drawing reasonable inferences in favor of the opponent, it appears that there may be a triable issue of fact, the court must deny a motion for summary judgment. *In re Estate of Kietrys* (1982), 104 Ill. App. 3d 269, 432 N.E.2d 903.

Through either plaintiff's amended complaint or supporting documents submitted in opposition to defendant's motion the following issues of facts were raised in the instant case: any unauthorized access to levels G3 and G4 had to be accomplished by passing through G1 and G2, the levels admittedly controlled by defendant; the sole agreement reached by the two corporate defendants, whereby Habitat granted General Parking managerial and operational control over the

facilities, was entered into before the subject occurrence; pursuant to the provisions of that agreement, defendant did eventually exercise direct control and supervision over levels G3 and G4; defendant had notice of prior criminal activities within the garage; at the time plaintiff signed the lease granting her parking privileges in the garage she was led to believe that the premises were safe and secure and thereby relied on said representation.

We find the aforementioned facts to be inconsistent with the entry of summary judgment, as a jury could reasonably find that defendant, at the time of the occurrence, had undertaken to control the entire lot. The record further reveals that defendant added additional security features to levels G3 and G4 subsequent to the subject incident. Although not admissible to establish negligence, evidence of such subsequent remedial measures would be admissible at trial to establish whether defendant had, at the time of the occurrence, assumed control of levels G3 and G4, the singular most important issue in this case.

The Illinois Supreme Court has long established that questions of negligence, due care, and proximate cause are ordinarily questions of fact for a jury to decide. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74.)

> "Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fairminded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function." (2 Ill. 2d 74, 84, 117 N.E.2d 74, 84.)

Summary judgment should not have, therefore, been granted under the circumstances of this case.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

PINCHAM and MURRAY, JJ. concur.