DONALD ESTEP *et al.*, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—54

Opinion filed June 16, 1983.

Thomas Johnson, Robert E. Lehrer, and Dveera Segal, all of Legal Assistance Foundation of Chicago, and Robert Burns, of Northwestern University Legal Clinic, and Mark C. Weber, of Mandel Legal Aid Clinic, all of Chicago, for appellants.

Jeremiah Marsh, John L. Conlon, and David O. Toolan, all of Hopkins &

Sutter, of Chicago, for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

This class action challenges the authority of the Illinois Department of Public Aid (IDPA) and its director, Jeffrey Miller, to set the monthly payment distributed to over 110,000 adult General Assistance (GA) recipients who live in Chicago and 40 other downstate communities at a lower amount than that set the year before. Our function on appeal is solely one of statutory interpretation; the plaintiffs have raised no constitutional claim.

The purpose of the GA program is to provide limited aid to meet the basic subsistence requirements of needy individuals. Under authority delegated by the legislature in the Illinois Public Aid Code, the IDPA acts as the program's administrator and determines the actual dollar amount to be distributed to recipients. The department first establishes the "standard of assistance" by pricing such items as food and clothing to determine the amount of money that a person needs each month to maintain a "livelihood compatible with health and well-being." (Ill. Rev. Stat. 1981, ch. 23, par. 12—4.11.) The IDPA then determines the "aid payment," or the amount actually provided as a matter of policy to recipients who have no outside income. The "aid payment" is adopted by administrative rule and may be of a lesser amount than the "standard of assistance." Ill. Rev. Stat. 1981, ch. 23, par. 12—4.11.

For the fiscal year 1983 (July 1, 1982—June 30, 1983), the IDPA established a grant amount of $144 per month by administrative rule. For the fiscal year 1982, the aid payment had been established at $162. Because of budgetary problems, the $162 amount was proposed to be reduced to $144 for the last two months of fiscal year 1982. The reduction was the subject of litigation which the supreme court eventually determined was moot. (*Estep v. Department of Public Aid* (1982), 92 Ill. 2d 510, 442 N.E.2d 148.) Consequently, those two months are not at issue in this lawsuit. The General Assembly appropriated $191.8 million for the 1983 GA program. The trial court found that, considering the proposed number of GA recipients and the amount of the appropriation, the IDPA properly exercised its discretion under the statute to set grant levels at $144 per month. The plaintiffs contend that the reduction in GA payments from $162 in 1982 to $144 in 1983 was a reduction unauthorized by statute.

The substance of this lawsuit necessarily revolves around the interpretation of section 12—4.11 of the Illinois Public Aid Code, which states in relevant part:

*"The Department, with due regard for and subject to budgetary limitations, shall establish grant amounts for each of the programs, by regulation.* The grant amounts may be less than the prices of the standards [*i.e.* standard of assistance] and may vary by program, size of assistance unit and geographic area and may be established in the form of a percentage of the standards for any or all programs.

*Aid payments shall not be reduced except for changes in (1) cost of items included in the standards, or (2) the expenses of the recipient, or (3) the income or resources available to the recipient, or (4) grants resulting from adoption of a consolidated standard ***"* (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 23, par. 12—4.11.)

The defendants essentially construe the statute to give them the delegated authority to continue to pay the reduced GA payments because the General Assembly's appropriation for the GA program in fiscal year 1983 would have been exhausted well before the end of the year unless individual GA payments remained at the $144 per month level. Placing primary reliance upon the "subject to budgetary limitations" language of the statute, the defendants contend that it was the legislature's intent that GA payments continue to be reduced because its $191.8 million appropriation for the program mirrored the $144 benefit level that was later set by the IDPA. In contrast, the plaintiff class members point to the four enumerated instances in the statute which sanction a reduction in aid payments and argue that because a budgetary shortfall does not fall under any of the four categories, the IDPA lacks the authority necessary to reduce payments if it faces a budgetary deficiency. The plaintiffs further argue that the IDPA's delegated authority to set grant amounts is specifically limited by the legislature in the four exceptions of the statute and that therefore, the IDPA acted in contravention of the statute when it reduced GA payments.

The sole question on appeal is whether the IDPA's disbursement of 1983 fiscal year GA payments at the lower rate of $144 per month is a violation of section 12—4.11 of the Illinois Public Aid Code. (Ill. Rev. Stat. 1981, ch. 23, par. 12—4.11.) The plaintiffs contend that the IDPA defied the Illinois Public Aid Code and acted without authority when it reduced GA payments prior to the end of the 1982 fiscal year and that this practice has wrongfully continued into fiscal year 1983. Because the plaintiffs are seeking only prospective relief on this appeal, we are asked to enjoin the IDPA from disbursing future GA payments at a rate of less than $162 per month. After our examina-

tion of the rules of statutory construction and an analysis of the legislative intent in this case, we find that the IDPA acted within its statutory authority when it set 1983 GA benefit levels at $144 per month and therefore, we find it necessary to affirm the judgment of the trial court.

Each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole. (2A C. Sands, Statutes and Statutory Construction sec. 46.05, at 56 (4th ed. 1973); see also *Mann v. Board of Education* (1950), 406 Ill. 224, 92 N.E.2d 743.) It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute and that a court may not read a statute so as to render any part inoperative, superfluous or insignificant. (*People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171; *People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10; 2A C. Sands, Statutes and Statutory Construction sec. 46.06, at 63 (4th ed. 1973).) In the instant case, we recognize that the two sections cited to us by the parties in support of their divergent positions are to some extent in conflict with one another. Specifically, the plaintiffs argue that aid payments were reduced from the $162 level set in fiscal year 1982 to a $144 level for 1983 even though the rationale for reducing payments, namely a budgetary· shortfall, did not fall under any of the four exceptions which sanction a reduction of aid payments. On the other hand, the defendants contend that the statute authorizes the IDPA to set grants amounts "with due regard for and subject to budgetary limitations" and that this language conceivably operates to guide the IDPA to set grant amounts at a level consistent with annual legislative appropriations for the program. Thus, as the defendants argue, if current grant levels would exceed the amount of money appropriated for the program in an upcoming year, grant levels must be set accordingly to reflect the amount of the appropriation, even if the end result is a decrease in the grant levels that were set the previous year.

Importantly, this appeal does not require us to determine whether the IDPA properly reduced grant levels prior to the end of the 1982 fiscal year and after the 1982 grant level had already been set at $162. We must only decide whether the IDPA had the authority to set fiscal year 1983 grant levels at $144 when levels had been set at a higher rate the previous year. By necessity, it appears to us, grant levels must be set once a year in anticipation of and in harmony with the annual State budget and its related legislative appropriations. We offer these observations to shed some light upon our interpretation of the seemingly disharmonious sections of the Illinois Public Aid Code

that are before us now. Specifically, because we are bound to construe the statute as a harmonious whole if it is at all possible, we do not think it unreasonable to conclude that the "subject to budgetary limitations" section of the statute gives the IDPA authority to set its yearly grant level in conformance with the annual budget that is appropriated for the Department by the legislature. After this grant level has thus been set "with due regard for and subject to budgetary limitations," we then believe that the IDPA is unable to reduce grant amounts for any other reason than one of the four exceptions provided in the statute. In other words, the IDPA has the statutory authority to set grant levels in unison with legislative appropriations for the year but may not reduce those annual grant levels for any reason not specified by the legislature in the statute. We believe that this construction gives meaning to both disputed sections of the statute and most closely mirrors the legislative intent of requiring the IDPA to set grant levels in conformance with legislative appropriations, while providing a degree of protection to recipients by forbidding departmental reductions in grant levels already determined under the guidance of the legislature.

We believe that our interpretation of the seemingly incongruous sections of the statute is correct in light of the statutory and constitutional requirements that an agency such as the IDPA set expenditures so as not to exceed its appropriations. First of all, "[n]o officer, institution, department board or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law." (Ill. Rev. Stat. 1981, ch. 127, par. 166.) If, in the instant case, the IDPA had set grant levels at $162, the record discloses that the Department's annual appropriation would be exhausted well before the end of the fiscal year. And where the IDPA is not expressly authorized to set grant levels in excess of its appropriation, it would have been improper to bind the State to a $162 grant level. Second, the Illinois Constitution provides that the General Assembly shall make all appropriations for expenditures of public funds and that the State may not incur any obligation for payments from public funds that are not authorized by law. (Ill. Const. 1970, art. VIII, secs. 1(b), 2(b).) In the case at bar, a $162 grant level would place an obligation upon the State to pay public funds in excess of the amount appropriated by the legislature to fund the program. Such a situation would be unauthorized by the legislature and would place the legislature in the position of being forced to appropriate additional funds in order to continue payments to aid recipients.

The plaintiffs nonetheless argue that the legislature cannot amend substantive statutory rights indirectly through an appropriations measure. (See Ill. Const. 1970, art. IV, sec. 8(d) ("appropriations bills shall be limited to the subject of appropriations"); *Benjamin v. Devon Bank* (1977), 68 Ill. 2d 142, 368 N.E.2d 878 (appropriation bill could not change existing statute).) However, we have already established that the exceptions section of the statute does not confer upon the plaintiffs any substantive right not to have grant levels set at a lower level than that set the year before. We therefore cannot conclude that the legislative appropriation for fiscal year 1983 in any way acted to change a right otherwise bestowed by the statute.

Furthermore, our perusal of the record discloses that the legislative intent to set 1983 grant levels at $144 is quite clear. Illustratively, when the Governor signed his statement regarding an additional 1982 fiscal year appropriation, he stated:

"I am today signing House Bill 2211 which authorizes an appropriation for the hiring of revenue auditors and collectors in the Department of Revenue. The legislation also transfers $19.7 million for continued payment of General Assistance through the end of this fiscal year.

The members of the General Assembly have thoroughly debated the issue of whether General Assistance should be $144 or $162 for the months of May and June and have chosen the $144 figure.

The floor debates reflect that the General Assembly was clearly aware of the difficulties the lower figure presented to recipients.

Nonetheless, the $144 figure was chosen and this was the only responsible choice. Many would have liked the higher figure to have been chosen, but given the economic condition of the State and budgetary demands and limitations, we cannot afford to pay more than $144 to this group of people.

*In the budget for the next year, we have also based our projections on a $144 grant level for General Assistance.* These choices are not easy ones. But we must all work together to hold the line on spending." (Emphasis added.)

In addition, when it became clear that $144 would become the grant level for 1983, a proposed amendment to the budget was introduced before the General Assembly that was designed to increase the benefit level to $162 per month. Following a debate during which the representatives discussed the propriety of either the $144 or $162 figure, the amendment was voted down. We believe that the fact that the

amendment was offered, discussed and subsequently voted down reflects the legislative understanding that the IDPA had the authority under the statute to reduce grant levels from those that were set the previous year. Further, the legislature expressly sanctioned the $144 level set by the IDPA by refusing to enact the proposed amendment. Therefore, we believe that it was the clear intent of the legislature that grant levels be set at $144 and that this intent was acted out by the IDPA when it set grant levels "with due regard for and subject to budgetary limitations," or in accordance with the legislature's appropriation for the program.

The parties raise a further argument regarding whether the exceptions portion of the statute applies only when the IDPA is considering the aid payments distributed to a single recipient. However, under our construction of the statute which gives the IDPA authority to set grant levels consistently with annual appropriations, we believe that this issue is irrelevant. Specifically, we think the "subject to budgetary limitations" language gives the IDPA authority to set grant levels either higher or lower than those set the previous year in order to be in line with legislative appropriations. After the grant levels have actually been set, then the IDPA is unable to reduce the levels unless one of the four exceptions is satisfied. Because this case deals with the period of time during which actual grant levels were set, the four exceptions do not come into play in the situation with which we are now faced. Thus, the parties' argument regarding whether the exceptions apply to one or many recipients is not relevant to this appeal.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

ROMITI, P.J., and JOHNSON, J., concur.