*In re* MARRIAGE OF HERBERT J. DREWS, JR., By his Guardian, LORRAINE DREWS, Petitioner-Appellant, and SUE ANN CARROTHERS DREWS, Respondent-Appellee.

First District (4th Division) No. 84—3019

Opinion filed December 19, 1985.

JIGANTI, P.J., dissenting.

Nye, Brent & Shoenberger, Ltd., of Chicago (Constance F. Fisher, of counsel), for appellant.

Schiller, Du Canto & Fleck, Ltd., of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Lorraine Drews (Lorraine), as legal guardian of her son Herbert Drews, Jr. (Herbert), filed a petition which requested dissolution of Herbert's marriage to Sue Ann Carrothers Drews (Sue Ann), distribution of their marital estate, maintenance for Herbert, and attorney fees and costs. Sue Ann filed a motion to dismiss the petition, arguing that Lorraine, as guardian of Herbert, lacked the authority to file a petition for dissolution of the marriage. The trial court granted the motion to dismiss, and Lorraine appeals.

Briefly stated, Lorraine argues that the Illinois Probate Act of 1975 (the Probate Act) (Ill. Rev. Stat. 1983, ch. 110½, par. 1—1 *et seq.*) provides for a guardian's authority to institute dissolution proceedings on behalf of the ward; that Illinois case law does not expressly prohibit a guardian from instituting marriage dissolution proceedings; and that the doctrine of substituted judgment authorizes a guardian's maintenance of a divorce claim. Sue Ann contends that both the Probate Act of 1975 and the Illinois Marriage and Dissolution of Marriage Act (the IMDMA) (Ill. Rev. Stat. 1983, ch. 40, par. 101 *et seq.*) prohibit a guardian from instituting marriage dissolution proceedings; that Illinois common law and the majority of other jurisdictions prohibit the institution of such proceedings; and that the doctrine of substituted judgment is inapplicable in the context of a guardian's authority to institute a dissolution action on behalf of a ward.

Based upon the broad purposes of the Probate Act of 1975 and the IMDMA, the *dicta* of Illinois Supreme Court and appellate court decisions, the majority view of other jurisdictions, and the limited applicability of the substituted judgment doctrine, we conclude that under Illinois law a guardian is generally without the power to institute such proceedings. As a result we find no error in the trial court's dismissal of Lorraine's petition on the ground that she lacked the authority to institute marriage dissolution proceedings on Herbert's behalf.

FACTS

Sue Ann's motion to dismiss argued that Lorraine's petition failed to state a claim for which relief may be granted. (Ill. Rev. Stat. 1983, ch. 110, par. 2—615.) Therefore all well-pleaded facts in the pleading are assumed to be true for the purposes of review. See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d

976.

In her verified petition for dissolution of marriage, Lorraine alleged that Herbert and Sue Ann were married on June 27, 1979; no children were born to the parties as a result of the marriage; and the couple had lived together from the date of the marriage until approximately May 1, 1981, on which date Herbert entered ''residential placement for treatment.''

At the time the petition was filed, Herbert was 31 years old and Sue Ann 28. Herbert was alleged to be ''a permanently and totally disabled person, having sustained a grievous brain injury, *** unemployed and *** a resident'' of a nursing home in Illinois. Sue Ann was alleged to be ''employed and self-supporting.''

Lorraine claimed in the petition that since the date of Herbert's entry into residential placement on May 1, 1981, Sue Ann ''has failed and refused to perform the duties of a wife under the circumstances and has abandoned [Herbert] to the care of his parents.'' Lorraine alleged that without any fault or provocation by Herbert, Sue Ann ''has been guilty of desertion and extreme and repeated mental cruelty toward [him].''

Lorraine alleged that during the marriage, Herbert and Sue Ann were able to acquire certain assets which constituted marital property and that all of such property was in Sue Ann's possession. She also claimed that there were substantial marital debts arising out of Herbert's ''accident'' (the date of which was not stated anywhere in the petition), and his ''consequent injuries,'' and that there were ''enormous medical, hospital and nursing home bills.'' Lorraine stated that Herbert could not support himself, nor did he have the funds with which to maintain the dissolution proceeding or to pay his costs and attorney fees. She alleged, however, that Sue Ann was able bodied and well able to support herself and that she was well able to pay Herbert's attorney fees and court costs for the litigation of the cause.

Based upon these allegations, Lorraine requested that the marriage of Herbert and Sue Ann be dissolved, that their marital estate be equitably distributed, that Herbert be awarded maintenance from Sue Ann, and that Herbert be awarded from Sue Ann his attorney fees and costs of suit.

In response to Lorraine's petition, Sue Ann filed a motion to dismiss for failure to state a claim (see Ill. Rev. Stat. 1983, ch. 110, par. 2—615) in which she argued that Lorraine's guardianship power did not encompass the institution of dissolution proceedings, but instead, as requested in Lorraine's petition for guardianship, was lim-

ited to the institution of a personal injury action on Herbert's behalf based upon the accident which precipitated his disability, to the defense of a foreclosure action which had been instituted against him, and to the provision of his care and maintenance in view of his disability. Sue Ann argued that Lorraine's guardianship power did not encompass the institution of marriage dissolution proceedings, and further that the right to file for dissolution of marriage is a personal one which can be exercised only by a spouse to the marriage.

Lorraine's response to the motion to dismiss claimed that her plenary guardianship over Herbert included the right to institute a divorce action on Herbert's behalf. She attached to her response a copy of letters of office granted her on November 12, 1982, which recited in pertinent part that she was "authorized to have the care, management and investment of the ward's estate and the custody of the ward and to do all things required by law."

Following a hearing, the trial court dismissed the petition with prejudice. Lorraine's timely appeal followed.[1]

OPINION

I

Our analysis begins with a consideration of whether the Probate Act of 1975 or the IMDMA specifically provide for or prohibit a guardian's institution of marriage dissolution proceedings. For the reasons stated below, we conclude that neither of the acts specifically allows for nor precludes it.

Section 11a—18(c) of the Probate Act of 1975 provides as follows (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(c)):

"The guardian of the estate of a ward shall appear for and represent the ward in all legal proceedings unless another person is appointed for that purpose as guardian or next friend. This does not impair the power of any court to appoint a

---

[1]In this appeal, Lorraine states in her appellate brief numerous facts beyond those presented in her original petition for dissolution of the marriage. Consequently, Sue Ann has filed before us a motion to strike Lorraine's statement of facts as contained in her appellate brief in this cause. Because we will consider only those factual matters properly of record, *i.e.*, those stated and well-pleaded in the original dissolution petition, we hereby deny Sue Ann's motion to strike a portion of Lorraine's appellate brief. We also do not consider Lorraine's argument that dismissal of her petition denied Herbert's procedural due process rights, as this argument was not raised before the trial court and was consequently waived. See *Swap Shop, Inc. v. M & R Amusement Corp.* (1981), 102 Ill. App. 3d 926, 932, 430 N.E.2d 499.

guardian ad litem or next friend to defend the interests of the ward in that court, or to appoint or allow any person as the next friend of a ward to commence, prosecute or defend any proceeding in his behalf."

Well established rules of statutory construction require that "[t]he words used in a statute ** be given their ordinary and popularly understood meaning" (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 215, 447 N.E.2d 394), and that the pertinent language be read in the context of the entire provision of which it forms an integral part. (*Estep v. Illinois Department of Public Aid* (1983), 115 Ill. App. 3d 644, 647, 450 N.E.2d 1281.) Based upon these principles, we conclude that section 11a—18(c) merely specifies those individuals who may appear for and represent the ward. Its purpose is procedural in nature, in that it sets forth the guardian's authority to assume a legal role on behalf of the ward. Consequently, we disagree with Lorraine's argument that the purpose of the provision is substantive in nature by providing that a guardian may represent a ward in literally "all legal proceedings." *Cf. In re Marriage of Kutchins* (1985), 136 Ill. App. 3d 45, 48-49, 482 N.E.2d 1005.

We next consider whether a guardian's authority to institute divorce proceedings can be implied from various provisions of the Probate Act of 1975.

Article XIa of the Illinois Probate Act of 1975 provides for the appointment of a guardian for a disabled adult. (Ill. Rev. Stat. 1983, ch. 110½, pars. 11a—1 to 11a—23.) It permits appointment of a guardian over the person of the ward (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(a)(1)), the estate of the ward (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(a)(2)), or over both the person and estate of the ward (plenary guardianship). (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(a)(3).) Regarding the general purpose and scope of such guardianships, the Act states (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(b)):

"Guardianship shall be utilized only as is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence. Guardianship shall be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations."

With regard to the duties of a guardian over the ward's personal estate, section 11a—17 provides, *inter alia*, that "[t]o the extent ordered by the court and under the direction of the court, the guardian of the person shall have custody of the ward and his minor and adult

dependent children; [and] shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance and such provisional services as are appropriate \*\*\*." (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—17(a).) It further specifies that the "guardian will assist the ward in the development of maximum self-reliance and independence." Ill. Rev. Stat. 1983, ch. 110½, par. 11a—17(a).

Section 11a—18 sets forth the duties of a guardian with regard to the ward's financial estate. It provides in pertinent part that the guardian shall have the care, management and investment of the estate, shall manage the estate frugally, and shall apply the income and principal thereof so far as necessary for the comfort and suitable support of the ward. Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(a).

■ Our analysis of these sections leads us to find no explicit basis or duty for a guardian's institution of a marriage dissolution action on behalf of the ward. In fact we observe that, to the extent that the Act refers to family and marital matters at all, it obligates the guardian 1) to care for the ward and his minor and adult dependent children, and to provide for their support, health, and education (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—17(a)); and 2) to manage the ward's estate "so far as necessary for the comfort and suitable support and education of the ward, his minor and adult dependent children, and *persons related by blood or marriage who are dependent upon or entitled to support from him* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(a).) Consequently, the Act anticipates that the guardian's duties normally include an obligation to continue recognition of the ward's family and marital relationships, presumably on the theory that such recognition is in the best interests of the ward.

Nevertheless we also find unpersuasive Sue Ann's claim that the Probate Act of 1975 precludes a guardian's institution of a divorce action because the Act does not expressly provide for it. This analysis is not well taken, for it assumes that the Probate Act of 1975 specifically enumerates the actions which a guardian may undertake on behalf of a ward, whereas in fact no such specific listing is stated in the Act. Based upon Sue Ann's premise, the logical conclusion would be that the Act prohibits a guardian from instituting any claim on behalf of the ward since no specific enumeration is stated. This result was clearly not the intention of the Act, nor is it the law in Illinois. See Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(c); *Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88.

Our analysis of the IMDMA similarly reveals no guidance to a de-

termination of the issue under review. Sue Ann claims in this regard that the IMDMA prohibits the instant suit and advances a comparative analysis of sections 302(a)(1) and 403(a)(1) of the IMDMA. (Ill. Rev. Stat. 1983, ch. 40, pars. 302(a)(1), 403(a)(1).) Section 302(a)(1) provides that "either a party or the legal representative of a party lacking capacity to consent may seek a declaration of invalidity [of a marriage]." (Ill. Rev. Stat. 1983, ch. 40, par. 302(a)(1).) Section 403(a)(1) requires that petitions for dissolution of a marriage be verified and state the age, occupation and residence of each party and his length of residence in this State. (Ill. Rev. Stat. 1983, ch. 40, par. 403(a)(1).) Sue Ann argues that because section 403 does not provide for representation of a spouse/ward by a guardian, although section 302 does provide for such representation, the IMDMA prohibits a guardian from instituting a claim for dissolution of the ward's marriage.

This contention is flawed, however, since its application would preclude a guardian from appearing on behalf of a spouse who is a respondent in a dissolution action. Nevertheless, Illinois law clearly permits this. (*Iago v. Iago* (1897), 168 Ill. 339, 48 N.E. 30; *Merneigh v. Merneigh* (1954), 2 Ill. App. 2d 352, 119 N.E.2d 492.) Furthermore, section 403(a) pertains to the necessary allegations of a dissolution petition; it does not address the question of which person may institute such proceedings. Section 302(a), on the other hand, is a codification of *Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88, which recognized the guardian's authority to institute an action for invalidity of a marriage on behalf of the ward. Accordingly, there is no basis for comparison of the two sections.[2]

Based upon the analysis set forth above, we conclude that neither the Probate Act of 1975 nor the IMDMA specifically determines whether a guardian is permitted to or prohibited from instituting an action to dissolve a ward's marriage to another.

[2] In reliance upon *Higginbotham v. Higginbotham* (Mo. App. 1940), 146 S.W.2d 856, in which the court observed that a guardian cannot commence a dissolution action because State law required verification of the dissolution petition by the spouse, Sue Ann argues that Illinois law prohibits a guardian from filing a dissolution petition because section 403(a) of the IMDMA requires that the petition be verified. (See Ill. Rev. Stat. 1983, ch. 40, par. 403(a).) Sue Ann cites no Illinois decision which holds that such verification requirement is jurisdictional (as the *Higginbotham* court held). Parenthetically we also observe that Missouri law may no longer hold such verification to be jurisdictional. (See *McCammon v. McCammon* (Mo. App. 1984), 680 S.W.2d 196, 200.) Accordingly we decline to hold here that the verification requirement of the IMDMA constitutes a bar to a guardian's institution of a dissolution claim on behalf of the disabled spouse.

## II

■ Since the common law powers of guardians still exist. where they are not inconsistent with Illinois statutory law (*Gits v. Foreman* (1935), 360 Ill. 461, 467-68, 196 N.E. 434; *Hempstead v. Broad* (1916), 275 Ill. 358, 363, 114 N.E. 120; *Wright v. Comley* (1884), 14 Ill. App. 551, 553), we turn to an analysis of Illinois common law. In this regard the parties cite to three Illinois Supreme Court Decisions (*Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88; *Iago v. Iago* (1897), 168 Ill. 339, 48 N.E. 30; *Bradford v. Abend* (1878), 89 Ill. 78) and one Illinois Appellate Court decision (*Newman v. Newman* (1963), 42 Ill. App. 2d 203, 191 N.E.2d 614).

■ The parties' arguments raise the question of whether these decisions constitute *stare decisis* with regard to the issue under review, or whether they are instead mere *obiter dicta*. If a rule stated in a case is "the expression of opinion upon a point in a case deliberately passed upon by the court" it is not *obiter dictum* but rather judicial *dictum* and nonetheless binding precedent. (*Scovill Manufacturing Co. v. Cassidy* (1916), 275 Ill. 462, 470, 114 N.E. 181.) Consequently "[w]hether a legal proposition stated in an opinion is *obiter dictum* is to be determined from a reading of the entire opinion. If the opinion expressed on a legal question is one casually reached by the court on an issue unrelated to the essence of the controversy or based on hypothetical facts, then it is *obiter dictum*." (*Larson v. Johnson* (1953), 1 Ill. App. 2d 36, 40, 116 N.E.2d 187; see also *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 779, 439 N.E.2d 975.) Illinois Supreme Court *obiter dicta* are not binding authority, although they may be persuasive. *Williams v. Crickman* (1980), 81 Ill. 2d 105, 113, 405 N.E.2d 799.

■ Our analysis of the above-referenced cases leads us to conclude that they serve only as *dicta* for the proposition that a guardian lacks the power to institute a marriage dissolution action. *Bradford v. Abend* (1878), 89 Ill. 78, held that a disabled spouse's conservator possessed the authority to institute an action to vacate a divorce judgment, on the ground that the prior decree, although founded upon the disabled spouse's petition for dissolution of the marriage, had been nevertheless obtained through fraud. In *Iago v. Iago* (1897), 168 Ill. 339, 48 N.E. 30, the court concluded that the disabled spouse's legal representative could also institute an action to vacate a prior divorce decree under circumstances where the divorce had been granted upon the competent spouse's petition for dissolution. *Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88, concerned the question of whether a spouse's guardian could institute an action to

annul a marriage. In *Newman v. Newman* (1963), 42 Ill. App. 2d 203, 191 N.E.2d 614, the court determined that the disabled spouse's appointed legal representative possessed the authority to institute an action to modify the terms of a previously entered divorce judgment. In each of these decisions, the courts' references to a guardian's lack of authority to institute divorce proceedings was collateral to the courts' analyses and conclusions.

We also consider the recent decision of *In re Marriage of Kutchins* (1985), 136 Ill. App. 3d 45, 482 N.E.2d 1005, in which the court's holding was "limited to the single proposition that one who has been adjudged to be a disabled person and for whom an estate guardian has been appointed, has legal capacity to sue for dissolution of marriage." (136 Ill. App. 3d 45, 49.) The court noted the majority rule of other jurisdictions to the effect that "a mentally incompetent person cannot sue for dissolution of marriage, either on his own behalf or by a guardian or next friend" and further commented that "Illinois has long since followed this rule," citing to *Bradford v. Abend* (1878), 89 Ill. 78, and *Iago v. Iago* (1897), 168 Ill. 339, 48 N.E. 30. Nevertheless the court's analysis was centered upon a consideration of whether "the appointment of a guardian of the estate is a sufficient finding of incompetency which would bar the ward from seeking a dissolution of marriage." (*In re Marriage of Kutchins* (1985), 136 Ill. App. 3d 45, 47, 482 N.E.2d 1005.) The court concluded that appointment of an estate guardian was insufficient in and of itself to preclude a ward's institution of such proceedings, reasoning that a finding of disability to manage one's estate or financial affairs "is a different and more demanding test of mental competency than is applicable to determining whether [a ward] is competent to enter into or dissolve a marriage." (136 Ill. App. 3d 45, 48.) Because the court in *Kutchins* was concerned with the capacity of a disabled spouse to institute dissolution of marriage proceedings where a guardian had been appointed over the spouse's estate, we conclude that its reference to the authority of a plenary guardian to commence such an action was *obiter dictum*.

As a result, we find no clear precedent in the above decisions that a guardian may never institute a dissolution of marriage action on behalf of the ward. Instead they establish that (1) a guardian or next friend may institute an action to vacate a divorce decree entered against the disabled spouse when the spouse was disabled and without guardian or next friend protection (*Iago v. Iago* (1897), 168 Ill. 339, 48 N.E. 30; *Bradford v. Abend* (1878), 89 Ill. 78; *Newman v. Newman* (1963), 42 Ill. App. 2d 203, 191 N.E.2d 614), and (2) a

guardian or next friend may institute an action on behalf of a ward to annul a marriage entered into by the disabled person during a period of mental disability. (*Pyott v. Pyott* (1901), 191 Ill. 280, 61 N.E. 88.) One of these decisions further noted that a guardian may represent a ward in defense of a dissolution petition wherein the ground for dissolution occurred prior to the commencement of the disability (*Iago v. Iago* (1897), 168 Ill. 339, 341, 48 N.E. 30), a rule which has been relied upon in a subsequent Illinois Appellate Court case (*Merneigh v. Merneigh* (1954), 2 Ill. App. 2d 352, 119 N.E.2d 492). It has also been recently held that a spouse for whom an estate guardian has been appointed has the legal capacity to sue for dissolution of marriage where the spouse possesses sufficient mental capacity to determine intelligently that the spouse desires dissolution of the marriage. *In re Marriage of Kutchins* (1985), 136 Ill. App. 3d 45, 482 N.E.2d 1005.

## III

Although the decisions considered above do not rise to the level of *stare decisis* with regard to the issue presently before us, nevertheless they remain persuasive authority on the question. In addition, the decisions of other jurisdictions, while not binding upon this court, present some guidance to a determination of the present cause. On this basis, then, we consider the persuasive value of the decisional law of Illinois and other jurisdictions in tandem.

Our research reveals that 16 jurisdictions have considered the question of whether a guardian possesses the authority to institute dissolution of marriage proceedings on behalf of the disabled spouse. Of these, 12 have determined that a guardian lacks such power, reasoning that the guardian's authority was strictly regulated by a statute which did not provide for such power, or that the decision to seek dissolution of a marriage is an inherently personal right, the exercise of which cannot or should not be delegated to a guardian. (See *Wood v. Beard* (Fla. App. 1958), 107 So. 2d 198, 199-201; *Phillips v. Phillips* (1947), 203 Ga. 106, 108-12, 45 S.E.2d 621, 622-24; *State ex rel. Quear v. Madison Circuit Court* (1951), 229 Ind. 503, 506-08, 99 N.E.2d 254, 256-57; *Mohler v. Shank's Estate* (1895), 93 Iowa 273, 279-80, 61 N.W. 981, 983-84; *Birdzell v. Birdzell* (1885), 33 Kan. 433, 435-36, 6 P. 561, 561-62; *Johnson v. Johnson* (1943), 294 Ky. 77, 78, 170 S.W.2d 889, 889; *Higginbotham v. Higginbotham* (Mo. App. 1940), 146 S.W.2d 856, 857; *In re Jennings* (1981), 187 N.J. Super. 55, 58-59, 453 A.2d 572, 574; *Mohrmann v. Kob* (1943), 291 N.Y. 181, 187-90, 51 N.E.2d 921, 923-24; *Freeman v. Freeman* (1977), 34

N.C. App. 301, 303-04, 237 S.E.2d 857, 858-59; *Turner v. Bell* (1955), 198 Tenn. 232, 245-54, 279 S.W.2d 71, 77-80; *Dillion v. Dillion* (Tex. Civ. App. 1925), 274 S.W. 217, 217-20; see generally Annot., 6 A.L.R. 3d 681 (1966 & 1984 Supp.).) Of the four jurisdictions which permit a guardian to institute a dissolution action, two so hold on the basis of statutory interpretation (see *Campbell v. Campbell* (1942), 242 Ala. 141, 142-43, 5 So. 2d 401, 402-03; *Cohn v. Cohn* (1941), 310 Mass. 126, 128-29, 37 N.E.2d 260, 262-63), and two so found because the ward was determined to possess sufficient mental capacity to consent intelligently to dissolution of the marriage. *In re Marriage of Higgason* (1973), 10 Cal. 3d 476, 483-85, 516 P.2d 289, 293-94, 110 Cal. Rptr. 897, 901-03 (*en banc*); *Boyd v. Edwards* (1982), 4 Ohio App. 3d 142, 446 N.E.2d 1151.

 Upon considered reflection of the holdings and reasoning of the jurisprudence of this State as well as that of other jurisdictions, we determine the better view is that a guardian generally lacks the authority to institute an action for dissolution of a ward's marriage where the ward is unable to form an intelligent decision to seek such dissolution.

We are particularly persuaded by the consideration that, because there is no fault in a marriage that might not be forgiven by a spouse, the decision to seek marriage dissolution is a strictly personal right and a matter of personal choice and concern. Indeed, the courts in *Iago, Pyott, Newman,* and *Kutchins* all specifically recognized, albeit in *dicta,* that "the right to sue for an absolute divorce is a personal right and requires the intelligent action of the injured party ***." (*Pyott v. Pyott* (1901), 191 Ill. 280, 288, 61 N.E. 88; see also *Iago v. Iago* (1897), 168 Ill. 339, 341, 48 N.E. 30; *Newman v. Newman* (1963), 42 Ill. App. 2d 203, 213, 191 N.E.2d 614; *In re Marriage of Kutchins* (1985), 136 Ill. App. 3d 45, 47, 482 N.E.2d 1005.) In addition we note that Illinois has long recognized and honored the sanctity of the marital bond. In fact the stated purpose of the IMDMA itself is to "strengthen and preserve the integrity of marriage and safeguard family relationships ***." (Ill. Rev. Stat. 1983, ch. 40, par. 102(2).) This policy indicates "a strong continuing interest in the institution of marriage and prevents the marriage relation from becoming in effect a private contract terminable at will." *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 64, 394 N.E.2d 1204; see also *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 345, 400 N.E.2d 421.

Furthermore, we are equally mindful of the consideration that dissolution of a marriage has an enormous impact not only upon the ward, but also upon the ward's spouse. Dissolution severs, termi-

nates, and extinguishes an entire panoply of legal, social, family, and personal rights, benefits, advantages, and opportunities. Given the magnitude of these consequences, we determine that the decision to so radically transmute a relationship is usually best exercised by the partners to the marriage, rather than by someone alien to it.

## IV

Lorraine proposes that this court adopt decisions of other States which recognize that the guardian possesses the authority to make certain "personal" decisions on behalf of the ward based upon the doctrine of substituted judgment, and extend application of this doctrine to the context of marriage dissolution proceedings.

The doctrine of substituted judgment requires the court to "don the mental mantle of the incompetent" (*In re Carson* (1962), 39 Misc. 2d 544, 545, 241 N.Y.S.2d 288, 289), to "substitute itself as nearly as may be for the incompetent, and to act upon the same motives and considerations as would have moved her." (*City Bank Farmers Trust Co. v. McGowan* (1945), 323 U.S. 594, 599, 89 L. Ed. 483, 489, 65 S. Ct. 496, 501.) In its traditional conception, the rule authorized the court to permit gifts from the disabled ward's estate to persons to whom the ward owed no duty of support. See *Ex Parte Whitbread* (1916), 2 Mer. Rep. 99, 35 Eng. Rep. 878; *In re Buckley's Estate* (1951), 330 Mich. 102, 47 N.W.2d 33; see also *In re Guardianship of Bohac* (Fla. App. 1980), 380 So. 2d 550 (gift for tax and estate planning purposes).) In its more contemporary conception the doctrine has been expanded in order to serve as a justification for authorization of a guardian's consent to certain medical treatments on behalf of the ward. See, *e.g., Strunk v. Strunk* (Ky. 1969), 445 S.W.2d 145 (renal transplant); *In re Moe* (1982), 385 Mass. 555, 432 N.E.2d 712 (sterilization); *In re Guardianship of Roe* (1981), 383 Mass. 415, 421 N.E.2d 40 (forcible administration of antipsychotic drugs); *Superintendent of Belchertown State School v. Saikewicz* (1977), 373 Mass 728, 370 N.E.2d 417 (refusal of chemotherapy); *In re Conroy* (1985), 98 N.J. 321, 486 A.2d 1209, modifying *In re Quinlan* (1976), 70 N.J. 10, 355 A.2d 647 (withdrawal of life-support systems); *In re Guardianship of Ingram* (1984), 102 Wash. 2d 827, 689 P.2d 1363 (radiation or surgery).

However, in our view the facts of the present case are analogous to neither the traditional nor the contemporary conception of the substituted judgment doctrine. The record of the instant case fails to establish any facts to support the conclusion that Herbert would have wanted to seek dissolution of his marriage to Sue Ann under any cir-

cumstances. Furthermore, even assuming *arguendo* that Herbert might have expressed a desire to seek dissolution of his marriage to Sue Ann under certain circumstances shown of record to have taken place subsequent to his enunciation of such an opinion, we are unpersuaded that this in itself would automatically be sufficient to grant Lorraine the authority she requests. In our view marriage is an ongoing, flexible, and fluid relationship of consent and compromise between two persons, which accords to both parties the right and prerogative to shift, alter, or rearrange their ideas, values, or patterns of behavior. In view of the personal nature of a decision to divorce and the significant consequences to both spouses which are attendant to such a decision, we determine that the fact that some conduct of one spouse may be sanctioned as grounds for dissolution of a marriage under the IMDMA would not *ipso facto* justify a guardian's institution of marriage dissolution proceedings. Nor would the simple fact that the ward, in the past, may have then perceived in the abstract that such behavior would be sufficient cause to seek dissolution of a marriage. Accordingly, we find Lorraine's argument insufficient basis to reverse the decision of the trial court here.

CONCLUSION

■■■ Based upon the reasoning set forth above, we conclude that under Illinois law a guardian is generally without the authority to commence a marriage dissolution proceeding on behalf of the ward. Parenthetically, we recognize the possibility that there may be compelling instances where it could be clearly shown that dissolution of the ward's marriage "is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence" (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(b)) such that Illinois law might consider granting the guardian the power to institute such a claim. Nevertheless, in our view the instant cause fails to present a compelling factual situation wherein dissolution of the ward's marriage would clearly serve any of these goals of the Probate Act of 1975. Our review of Lorraine's pleadings indicates that they are insufficient to establish *prima facie* facts clearly demonstrating that dissolution would be in Herbert's best interests. Lorraine has been appointed plenary guardian of Herbert's estate, and there is no allegation or inference of concern that Sue Ann might mismanage or dissipate it. Further, because Herbert is allegedly "a permanently and totally disabled person," there is no reasonable inference that Sue Ann's marital companionship, comfort, or

support, or the absence of any of these, causes him any mental, emotional, cognitive, or physical harm, trauma, or damage. In terms of his needs and interest, it would serve none of the stated purposes of the Probate Act of 1975 to grant Herbert a dissolution of his marriage in the present assumed factual setting. As a result, we conclude that the trial court properly dismissed Lorraine's petition for failure to state a claim for which relief could be granted.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

Lorraine Drews was appointed by the court as the plenary guardian (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—3(a)) of her 31-year-old son, Herbert J. Drews, Jr. She filed to have her son's marriage to Sue Ann Drews dissolved. The guardian alleged that her ward is permanently and totally disabled because of a brain injury; that his wife abandoned him to the care of his parents; that during the course of their marriage they had acquired certain assets constituting marital property which were in the wife's possession; that the wife is able-bodied and able to support herself; and that there are substantial marital debts and enormous medical bills. In the guardian's petition to dissolve the marriage, she requests that the marital estate be equitably distributed and that the ward be awarded maintenance from his wife.

The wife filed a motion to dismiss, contending that the right to file for a dissolution of a marriage is a personal right and must be brought by the spouse and cannot be maintained by a guardian on behalf of her ward. The trial court granted the motion. The result of granting the motion was, of course, to hold as a matter of law, at least under this factual setting, that a plenary guardian of the person and the estate has no legal right to seek a marriage dissolution. As a consequence, the court then cannot exercise its discretionary authority in determining whether the guardian's actions were in the ward's best interests.

The majority in considering this issue finds that there is nothing in either of the Probate Act of 1975 or in the IMDMA which either provides for or excludes the institution of the dissolution proceeding by the guardian. Further, the majority finds that there is no precedent in the decisions that it examined which holds that a guardian

may never institute a dissolution of marriage action. It concludes, however, that the guardian *generally* lacks the authority of power to institute an action for dissolution. It reaches this conclusion because it believes that the decision to seek a marriage dissolution is strictly a personal right and that the dissolution of marriage has an enormous impact upon both the ward and the spouse.

I respectfully dissent from the holding and from the reasoning of the majority. I believe that the right to seek a divorce is encompassed within the duties of a plenary guardian who is charged with the responsibility of acting in the ward's best interests. Upon appointment as a guardian, the guardian is empowered to make all necessary decisions concerning the ward's best interests. (Ill. Rev. Stat. 1983, ch. 110½, pars. 11a—17 and 11a—18.) Given such broad authority, the court has the discretionary authority under the statute to determine whether the guardian's actions are for the ward's best interests. I fail to see why in the instant case it should be found as a matter of law that a guardian may not seek the dissolution of the ward's marriage when it has been alleged that dissolution is for the ward's best interests. Whether dissolution is appropriate here is for the trial court to determine within its discretionary power.

In considering the fact that the marriage dissolution is strictly a personal right, the majority expresses a noble sentiment when it says that in a marriage there is no fault that may not be forgiven. To a totally and permanently disabled ward who has been abandoned and deprived of a portion of his marital estate and is in no position to forgive, the sentimentality lacks substance. Still considering this idea that marriage dissolution is a personal right that cannot be exercised by a guardian, other courts have found that the guardian may consent to an operation (*In re Guardianship of Roe* (1981), 383 Mass. 415, 421 N.E.2d 40, sterilization (*In re Moe* (1982), 385 Mass. 555, 432 N.E.2d 712), donation of a kidney (*Strunk v. Strunk* (Ky. 1969), 445 S.W.2d 145) and even consent to remove life support systems and allow the ward to die (*In re Conroy* (1985), 98 N.J. 321, 486 A.2d 1209, modifying *In re Quinlan* (1976), 70 N.J. 10, 355 A.2d 647). No more personal is the right to dissolve a marriage.

I would reverse this dismissal that was based on the pleadings. This matter should be remanded to that part of the trial court which established the guardianship. That judge should thoroughly consider all of the circumstances regarding the alleged abandonment and marital estate matters and determine whether the guardian's initiation of marriage dissolution proceedings is in the ward's best interests.